*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0047p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

>
>*Plaintiff-Appellee,*
>
> No. 03-2126
>
> *v.*
>
> DAVID LEE OLIVER,
>
>*Defendant-Appellant.*
>

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 02-00038—David W. McKeague, District Judge.

Argued: November 4, 2004

Decided and Filed: February 2, 2005

Before: MOORE and GIBBONS, Circuit Judges; MILLS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Jeffrey D. Winchester, JONES DAY, Columbus, Ohio, for Appellant. Timothy P. VerHey, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Jeffrey D. Winchester, JONES DAY, Columbus, Ohio, for Appellant. Joan E. Meyer, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant David Oliver ("Oliver") appeals his conviction for conspiracy to possess methamphetamine with the intent to distribute. Oliver was arrested after the police executed a search warrant at his residence and discovered methamphetamine. While awaiting trial, Oliver was placed in a drug treatment facility but then left the facility without staff permission. He raises four main issues on appeal: (1) that the district court erred when it denied his motion to suppress evidence found at his residence; (2) that the district court erred in permitting the jury to consider Oliver's flight as evidence of his guilt; (3) that the district court erred in applying a two-level enhancement at sentencing for obstruction of justice

---

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

1

based on Oliver's flight from the drug treatment facility; and (4) that the sentence imposed by the district court violated the Sixth Amendment.

For the reasons set forth below, in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. ---, Nos. 04-104 and 04-105, 2005 WL 50108 (Jan. 12, 2005), we conclude that the district court plainly erred by increasing Oliver's sentence pursuant to the federal sentencing guidelines in violation of the Sixth Amendment. Therefore, we **VACATE** Oliver's sentence and **REMAND** for re-sentencing. As to the other errors raised by the defendant, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

In 2000 the Kalamazoo Valley Enforcement Team ("KVET"), a police drug unit comprised of various city and county police officers in the Kalamazoo, Michigan area, obtained information that Oliver was involved in the distribution of methamphetamine. Office Sheila Goodell ("Officer Goodell") applied for and received a search warrant for Oliver's residence in Kalamazoo. On February 25, 2001, Officer Goodell and other KVET officers executed the search warrant. Upon arriving at Oliver's residence, the police found the residence occupied by four men: Oliver, his brother, and two of Oliver's friends. The officers handcuffed the four men and had them sit on the living room sofa while the search was executed. During the course of their search, the officers uncovered methamphetamine, drug paraphernalia, and four firearms. Following the search, Oliver was taken into custody and informed that a copy of the search warrant and a tabulation of the property seized would be left at his home.

Oliver was charged with various drug-related offenses and initially placed on pretrial release. His bond was later modified after he tested positive for drug use. On July 16, 2002, as part of this bond modification, Oliver was placed in the Community Alternatives Program ("CAP"), which is a residential halfway house and drug treatment program. Oliver then left CAP without staff permission on September 7, 2002. The police later received information that Oliver was living at his residence in Parchment, Michigan. The police went to the residence, where Oliver's wife answered the door and confirmed that the defendant was there. Oliver then came to the door and was taken into custody.

While at the residence, police officers observed two surveillance cameras on the residence's roof pointed at the home's front and side doors. The government alleges that Oliver admitted to police that the cameras were installed so that he could be aware if police officers were approaching. The government also contends that Oliver admitted to the officers that someone had been making methamphetamine in his home that day and that he had used methamphetamine the day prior to his arrest.

Prior to trial, Oliver filed a motion to suppress the evidence obtained from his Kalamazoo residence. The district court held a suppression hearing on the motion. During the hearing, Oliver testified that during the search he had requested to see the warrant, but that the KVET officers refused to show him a copy of the warrant. As a result, Oliver argued that he was not shown a copy of the search warrant until after the search was completed. Oliver also testified that a copy of the search warrant and a tabulation of the property seized by police was not provided to him until the day after the search was conducted. The government contests this, arguing that a copy of the warrant and the tabulation was left at the defendant's residence following the completion of the search. At the close of the hearing, the district court denied Oliver's motion to suppress based on the court's finding that the officers had a warrant to search the premises and lawfully executed the search of Oliver's home.

A jury trial was then held, and Oliver was convicted of conspiracy to possess methamphetamine with the intent to distribute. During the trial, the district court allowed evidence of Oliver's flight from CAP to be introduced and instructed the jury that it could consider Oliver's flight as evidence of his guilt.

On August 4, 2003, a sentencing hearing was conducted. Oliver objected to the Pre-Sentence Report's recommendation that pursuant to United States Sentencing Guideline ("U.S.S.G.") § 3C1.1 a two-level sentence enhancement be imposed for obstruction of justice based on Oliver's flight from CAP. Oliver alleged that his leaving CAP did not constitute obstruction of justice. The district court rejected this argument and applied the two-level sentence enhancement. As a result, Oliver was sentenced to 180 months' imprisonment and supervised release of five years. Oliver then filed this timely appeal.

## II. ANALYSIS

On appeal Oliver has raised four claims: (1) that the district court erred in failing to suppress evidence recovered from his residence; (2) that the district court erred in permitting the jury to consider his flight from CAP as evidence of his guilt; (3) that the district court erred in imposing a sentence enhancement because his flight from CAP did not constitute obstruction of justice; and (4) that the district court's sentencing determination was unconstitutional pursuant to the Supreme Court's recent decision in *United States v. Booker,* 2005 WL 50108.

### A. Motion to Suppress

"When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000) (citing *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)). "A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Navarro-Camacho*, 186 F.3d at 705. Additionally, when "factual findings rest in large part on credibility determinations, we afford district courts even greater deference." *Id.* at 707.

Oliver asserts that his motion to suppress ought to have been granted based on alleged violations the Fourth Amendment and Federal Rule of Criminal Procedure 41: (1) that the police failed to obtain a search warrant prior to executing a search of his home; and (2) that, even if a search warrant existed, the police failed to provide Oliver with a copy of the warrant when one was requested. As support for this argument, Oliver points to his own testimony and that of his brother at the suppression hearing in which the two men testified that the officers refused Oliver's request to see a copy of the warrant and made statements suggesting that the officers did not have a warrant. Oliver argues that the logical import of these statements is that the search violated the Fourth Amendment and Rule 41.

We need not address whether Oliver's testimony and that of his brother establishes a violation of Rule 41 or the Fourth Amendment. At the end of the suppression hearing, the district court rejected Oliver's testimony in whole as noncredible. The district court explicitly stated:

> This is a classic case of who is to be believed. [Oliver's brother], who fled [during the search], and was trying to warm up while he's inside on the sofa; Mr. David Oliver, who was under the influence of methamphetamine at the time of this incident; Officer Goodell or Officer McGahan. The Court finds that *neither of the Oliver brothers are credible in this case*. The Court finds, after having carefully observed all four of these witnesses that I'm addressing individually, that *the officers are credible*, their testimony is consistent, and simply refutes any suggestion whatsoever

> that there was not a warrant in existence at the time that entry was made and this
> search was effectuated.

Joint Appendix ("J.A.") at 198-99 (Tr. of Final Pretrial Conf. at 91) (emphasis added). Absent clear error by the district court in its credibility finding, we must consider the facts of the case as asserted by the police officers during the suppression hearing. There is no evidence in the record to suggest the district court clearly erred in finding Oliver's testimony and that of his brother was noncredible. Thus, the district court determined that a warrant was properly obtained prior to the search and provided to Oliver along with a tabulation of the property seized during the search. Given these facts, the search of Oliver's residence therefore did not violate the Fourth Amendment or Rule 41. We therefore affirm the district court's denial of Oliver's motion to suppress.

## B. Flight Instruction

On appeal Oliver alleges that the district court erred in instructing the jury that it was permitted to consider Oliver's flight from CAP as evidence of his guilt. Oliver's characterization of his argument, however, is somewhat misleading. Oliver does not appear to allege that the language used by the district court judge in his instruction to the jury was an erroneous statement of the law. Instead, what Oliver is contending is that it was erroneous for the district court to have permitted evidence of Oliver's flight to be introduced at trial.

Because Oliver failed to object to the admission of the flight evidence at trial, we can only reverse on a showing of "plain error" by the district court. *See United States v. Burnette*, No. 99-6342, 2001 WL 1254912, *4 (6th Cir. Oct. 10, 2001); *United States v. Calloway*, 116 F.3d 1129, 1136 (6th Cir.), *cert. denied*, 522 U.S. 925 (1997); FED. R. CRIM. P. 52(b). "A 'plain error' is an error that is clear or obvious, and if it affects substantial rights, it may be noticed by an appellate court." *United States v. Barajas-Nunez*, 91 F.3d 826, 830 (6th Cir. 1996). Our authority to remedy a "plain error" is discretionary. *United States v. Olano*, 507 U.S. 725, 735 (1993). We "should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 736 (citation omitted).

"Flight evidence comes in as an admission of guilt by conduct." *Dillon*, 870 F.2d at 1126. Courts, however, have "consistently doubted the probative value in criminal trials" of flight evidence. *Wong Sun v. United States*, 371 U.S. 471, 483, n.10 (1963). Thus, before a jury may be permitted to consider flight as evidence of guilt, the district court must determine that the flight evidence has genuine probative value. *Dillon*, 870 F.2d at 1126. In order to ensure that the flight evidence has probative value, we employ a four-step analysis. *Id.* at 1127. For evidence of flight to be of probative value, four inferences must be drawn: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *Id.* (citation omitted). "All four inferences must be 'reasonabl[y] support[ed]' by the evidence.*" Id.* (citation omitted).

As to the first inference, there must be evidence that there was flight by the defendant. *United States v. Myers*, 550 F.2d 1036, 1050 (5th Cir. 1977), *cert. denied*, 439 U.S. 847 (1978) (noting that there must be more evidence of flight than mere "conjecture and speculation"). In this case, the first inference presents no analytical challenge. Remaining in CAP was a condition of Oliver's release on bond pending trial. Oliver left CAP without the permission of the facility staff. He did not return to CAP for nearly five weeks and admitted to police that he had no intention of returning to CAP. Therefore, Oliver's actions represented flight from custody.

As to the second and third inferences, Oliver fled knowing that he had been indicted for possession of methamphetamine. He also evidenced his consciousness of his guilt through the

installation of surveillance cameras at his home in order to ensure that he would know if the police were approaching the residence. Oliver also admitted to police that someone had been manufacturing methamphetamine at his home, and that he had taken methamphetamine the day prior to his recapture. Finally, Oliver admitted to the police that he did not intend to return to the CAP facility. The cumulative effect of this evidence creates an inferential link between Oliver's flight and his knowledge of his guilt of the crimes charged in this case.

As to the fourth inference, there is sufficient evidence derived from Oliver's statements, prior police investigation, and evidence seized during the search of Oliver's home that connect Oliver's consciousness of his guilt to his actual guilt on the charge of possession of methamphetamine. We therefore conclude that the inferences necessary for flight to be admitted as evidence of Oliver's guilt were present in this case.

Oliver argues that evidence of flight can be considered by the jury only where the defendant fled immediately after a "precipitating event," namely either immediately after the commission of the crime or immediately following the defendant's discovery that he is being charged with the crime. Immediacy is generally only relevant, however, where "the defendant does not know, or his knowledge is doubtful, about the charges and accusations made against him" at the time of his flight. *United States v. Hernandez-Miranda*, 601 F.2d 1104, 1106 (9th Cir. 1979). Where it is clear the defendant is aware of the charges against him, the immediacy factor is not required to show consciousness of guilt. *Id.* (flight instruction proper where defendant fled just prior to trial). Thus, the district court did not abuse its discretion in permitting evidence of Oliver's flight to be introduced at trial.

## C. Sentencing

At sentencing, Oliver argued that his flight from CAP did not qualify as obstruction of justice for sentencing purposes. Thus Oliver contends that he should not have received a two-level sentence enhancement pursuant to U.S.S.G. § 3C1.1. The district court disagreed with Oliver and determined that based on Oliver's flight, U.S.S.G. § 3C1.1 required the court to impose the sentence enhancement. Oliver now appeals the district court's ruling.

Oliver also asserts for the first time on direct appeal that pursuant to the Supreme Court's decision in *Booker*, 2005 WL 50108, the district court's sentencing determination violated the Sixth Amendment.[1] Specifically, Oliver argues that the district court's application of U.S.S.G. § 3C1.1 based on judge-found fact violates the mandates of *Booker*. We review both claims and conclude that the case must be remanded for re-sentencing in accordance with *Booker*.

---

[1] Oliver's brief did not initially raise the claim that his sentence violated the Sixth Amendment as the brief was submitted prior to the Supreme Court's ruling in either *Blakely v. Washington*, 124 S. Ct. 2531 (2004), or *United States v. Booker*, 543 U.S. ---, Nos. 04-104 and 04-105, 2005 WL 50108 (Jan. 12, 2005). Prior to our oral argument, the Supreme Court announced its decision in *Blakely*. In response, on July 21, 2004, Oliver submitted a letter pursuant to Federal Rule of Appellate Procedure 28(j) advising us that *Blakely* constituted a supplemental authority pertaining to Oliver's sentencing challenge. At oral argument, Oliver's appellate counsel again asserted that Oliver's sentence violated the Sixth Amendment under *Blakely*. Oliver also submitted a second Rule 28(j) letter following the Supreme Court's decision in *Booker*, arguing that based on that decision his case should be remanded for re-sentencing.

We conclude that the steps taken by Oliver both before and after oral argument were sufficient to raise on appeal the issue of the constitutionality of Oliver's sentence. Both letters submitted by Oliver complied with requirements of Rule 28(j) and, along with counsel's statement at oral arguments, provided us with notice of the challenged issue. We agree with the First Circuit's determination in *United States v. Cordoza-Estrada*, 385 F.3d 56 (1st Cir. 2004) that: "Since Appellant's argument depends upon a decision that did not exist at the time of briefing, a 28(j) letter is a perfectly appropriate avenue by which to present it." *Id.* at 59 (accepting a Rule 28(j) letter making an argument based on *Blakely* that could not have been made when the briefs were submitted).

### 1. Sixth Amendment

We may review the validity of Oliver's Sixth Amendment claim based on *Booker* despite the fact that the Supreme Court did not issue its decision in *Booker* until after the district court issued a sentencing determination for Oliver. *See Booker*, 2005 WL 50108 at *29 (noting that the case's Sixth Amendment holding and its interpretation of the federal sentencing guidelines apply to all cases pending on direct review). As Oliver failed to raise a Sixth Amendment challenge to his sentence in district court, however, we can only reverse on a showing of "plain error" by the district court. *Calloway*, 116 F.3d at 1136; FED. R. CRIM. P. 52(b). We read the Supreme Court's decision in *Booker* as encouraging us to review cases like Oliver's which are currently pending on direct appeal for "plain error" where the Sixth Amendment issue was not raised before the district court. *Booker*, 2005 WL 50108 at *29 (noting that the majority expects reviewing courts to apply the case's holding to currently pending appeals and apply prudential doctrines such as the plain-error test in reaching their decisions). "We therefore turn to apply here Rule 52(b) as outlined in *Olano*. Under that test, before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson v. United States*, 520 U.S. 461, 466 (1997) (internal quotation and citation omitted).

In applying the first prong of the plain-error test we must determine whether an error occurred. The Supreme Court in *Booker* concluded that the Sixth Amendment as construed in *Blakely v. Washington*, 124 S. Ct. 2531 (2004), does apply to sentencing pursuant to the federal sentencing guidelines. Thus, *Booker* made applicable to the federal sentencing guidelines the Supreme Court's past holding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt" or else the Sixth Amendment is violated. *Booker,* 2005 WL 50108 at *15.

In this case, the district court concluded that given the crime for which Oliver was convicted and his past criminal history, the applicable base sentencing guideline range was 135 months to 168 months of imprisonment. The district court, however, concluded that Oliver's flight from CAP qualified as an obstruction of justice under the federal sentencing guidelines. Pursuant to U.S.S.G. § 3C1.1, therefore, the district court imposed a two-level sentencing enhancement. This raised the applicable sentencing guideline range from 135 to 168 months of imprisonment, to 168 months to 210 months of imprisonment. The district court then sentenced Oliver to 180 months' imprisonment.

Given that the federal sentencing guidelines were mandatory at the time the district court sentenced Oliver, it seems clear now in light of *Booker* that the sentence imposed violated the Sixth Amendment. The facts as established beyond a reasonable doubt by the jury verdict only supported a maximum sentence of 168 months' imprisonment pursuant to the federal sentencing guidelines.[2] The district court imposed a sentence twelve months longer than the guideline maximum, based upon judge-found fact and the mandates (prior to *Booker*) of the federal sentencing guidelines. Given this extension of the length of Oliver's sentence beyond that supported by the facts determined by the jury, we must conclude that the district court's sentencing determination violated the Sixth Amendment.

---

[2]The jury did consider evidence of Oliver's flight as evidence of his guilt at trial. The jury verdict, however, did not indicate whether the jury concluded beyond a reasonable doubt that Oliver had fled CAP. Thus, the mere fact that evidence of Oliver's flight was introduced at trial does not alter our Sixth Amendment analysis.

Our conclusion is consistent with the facts of *Booker* and the Supreme Court's decision in that case. In *Booker*, the jury found Booker guilty of possession with the intent to distribute at least fifty grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). Section 841(a)(1) creates a mandatory-minimum sentence of ten years in prison and a maximum sentence of life for that offense. Booker's criminal history and the quantity of the drugs found by the jury placed Booker within a base sentencing guideline range of 210 months to 262 months of imprisonment. At sentencing, however, the judge concluded by a preponderance of the evidence that Booker had possessed an additional quantity of crack beyond the amount determined by the jury and that Booker had obstructed justice. Based on these judge-found facts the district court imposed a sentence of 360 months as mandated by the federal sentencing guidelines.

On appeal, the Seventh Circuit concluded that Booker's sentence violated the Sixth Amendment pursuant to the Supreme Court's decisions in *Blakely* and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Seventh Circuit remanded the case for re-sentencing. The Supreme Court then granted the government's petition for a writ of certiorari. The Supreme Court affirmed the Seventh Circuit's judgment and remanded the case to the district court for re-sentencing consistent with its opinion. *Booker*, 2005 WL 50108 at \*29. Given this outcome, we must conclude that the district court erred in sentencing Oliver pursuant to U.S.S.G. § 3C1.1.

The second prong of the plain-error test is satisfied under Supreme Court precedent. A "plain error" is one that is clear or obvious. *Olano*, 507 U.S. at 734. The critical question in this case is *when* the error must be plain. While the error is certainly plain post-*Booker*, it may not have been so clear to the district court at the time of sentencing. *See generally United States v. Koch*, 383 F.3d 436 (6th Cir. 2004) (en banc) (majority holding that the federal sentencing guidelines did not violate the Sixth Amendment), *overruled by Booker*, 2005 WL 50108. The Supreme Court made clear in *Johnson* that an error need not always be obvious at the time of the district court's determination in order to be considered plain. "[W]here the law at the time of trial was settled and clearly contrary to the law at the time of the appeal [] it is enough that an error be 'plain' at the time of appellate consideration." *Johnson*, 520 U.S. at 468. Here, at the time of sentencing it was uncontested that mandatory federal guideline sentencing enhancements based on judge-found fact presented no Sixth Amendment concerns; however, by the time of appellate consideration, the law changed, and it is now evident that the district court's sentencing determination was in clear violation of *Booker*. Following the Supreme Court's lead in *Johnson*, we conclude that the second part of the plain-error test is therefore satisfied.

As to the third prong of the plain-error test, we must consider whether the district court's "plain error" affects Oliver's substantial rights. We have held in the past that a sentencing error affects substantial rights where it causes the defendant "to receive a more severe sentence." *United States v. Swanberg*, 370 F.3d 622, 629 (6th Cir. 2004); *see also Olano*, 507 U.S. at 734 (an error affects substantial rights if the error affects the outcome of the district court proceedings). In this case, the district court's sentencing determination unconstitutionally increased Oliver's sentence beyond that which was supported by the jury verdict and Oliver's criminal history. As a result Oliver arguably received a sentence that was longer than his sentence would have been absent a Sixth Amendment violation. We must therefore conclude that this sentencing error affected Oliver's substantial rights.

Finally, we must consider whether the "plain error" at sentencing "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 734-37 (internal quotation and citation omitted). A sentencing error that leads to a violation of the Sixth Amendment by imposing a more severe sentence than is supported by the jury verdict "would diminish the integrity and public reputation of the judicial system [and] also would diminish the fairness of the criminal sentencing system." *United States v. Bostic*, 371 F.3d 865, 877 (6th Cir. 2004) (internal

quotation and citation omitted).[3]  We therefore conclude that the district court plainly erred by applying the federal sentencing guidelines as mandatory rather than advisory and thereby sentencing Oliver beyond the sentencing range which the jury verdict and Oliver's criminal history supported.

Having concluded that the district court's sentencing determinations in this case plainly violate the Sixth Amendment, we need not consider whether such an error was harmless.  *See Booker*, 2005 WL 50108 at \*29 (noting that the harmless-error doctrine ought to be applied on appellate review only in cases not involving a Sixth Amendment violation).  We also note in passing that such an analysis for harmless error would be unnecessary based on the relationship between the plain-error and harmless-error standards.  An error may be harmless only where the government is able to prove that none of the defendant's substantial rights have been affected by the error.  FED. R. CRIM. P. 52(a).  We have already concluded in this case, however, that the error affected Oliver's substantial rights.  Thus, the Sixth Amendment violation cannot be shown by the government to be a harmless error.

Having determined that the district court's sentencing determination violated Oliver's Sixth Amendment rights, we must remand the case to the district court for re-sentencing consistent with the Supreme Court's decision in *Booker*.

## 2.  Sentencing Enhancement

In *Booker* the Supreme Court was faced with the challenge of determining how to remedy potential Sixth Amendment violations created by the mandatory sentencing enhancements under the federal sentencing guidelines.  Writing for the Court, Justice Breyer concluded that the proper remedy was to sever the statutory provisions which make the federal guidelines mandatory in nature, thereby rendering the guidelines effectively advisory.  *Booker*, 2005 WL 50108 at \* 16.  The Court

---

[3]We note that the Supreme Court concluded in *United States v. Cotton*, 535 U.S. 625 (2002), that the type of *Apprendi* violation raised by Cotton did not meet the fourth prong of the "plain error" test where the evidence upon which the judge based his sentencing determination was "overwhelming and essentially uncontroverted."  *Id.* at 633 (internal quotation marks and citations omitted). *Cotton* is nonetheless distinguishable and does not control our analysis in this case.

The outcome in *Cotton* was premised on the determination that an *Apprendi* violation could not be remedied through re-sentencing.  Instead, the evidence underlying the judge-found facts could be considered only if the facts had been originally charged in the indictment and found by the jury.  *Cotton*, 535 U.S. at 627.  Thus, the Court posited that a "real threat" to "fairness, integrity, and public reputation of judicial proceedings" existed if it permitted such cases to be remanded under "plain error" review as defendants "involved in large-scale drug operations" would receive less severe punishments than "the overwhelming and uncontroverted evidence" supported.  *Id.* at 633-34 (internal quotation marks and citations omitted).  In this case such concerns are unwarranted as the district court judge may still consider the evidence of flight during re-sentencing.  The district court must simply consider this evidence in a manner consistent with *Booker*.  There is no concern that Oliver will be granted a windfall if we permit "plain error" review.  Given that primary concern of the Supreme Court in *Cotton* is not present here, we conclude that its analysis of the fourth prong of the "plain error" test is distinguishable and inapplicable.

The Supreme Court's decision in *Booker* eliminates the mandatory nature of the federal sentencing guidelines, thereby giving district courts additional discretion as to both the factors which they may consider at sentencing and the length of imprisonment to be imposed.  Provided that a district court judge metes out a sentence which constitutes a reasonable application of 18 U.S.C. § 3553(a), the sentence may diverge from the applicable guideline range.  *Booker*, 2005 WL 50108 at \*16.  Thus, even if we conclude that the evidence is "overwhelming and essentially uncontroverted" we cannot know the length of imprisonment that the district court judge would have imposed pursuant to this evidence following *Booker*.  *Cotton*, 535 U.S. at 633 (internal quotation marks and citations omitted).  We would be usurping the discretionary power granted to the district courts by *Booker* if we were to assume that the district court would have given Oliver the same sentence post-*Booker*.  A failure to remand this case to the district court for re-sentencing would therefore "seriously affect[] the fairness [and] integrity" of our judicial proceedings following the Supreme Court's decision in *Booker*.  *Cotton*, 535 U.S. at 631 (internal quotation marks and citations omitted).

On these grounds *Cotton* is distinguishable, and the Supreme Court's fourth prong analysis in *Cotton* is not controlling here.  Our conclusion is consistent with *Booker*, which noted the importance of "plain error" review but did not reference *Cotton*.  *Booker*, 2005 WL 50108 at \*29.

emphasized, however, that 18 U.S.C. § 3553(a) remains binding on the federal courts. *Id.* at \*25. Section 3553(a) includes a list of factors which federal courts must consider when determining the proper sentence post-*Booker*. Among these is § 3553(a)(4) which instructs sentencing courts to consider the applicable federal sentencing guideline range when determining the appropriate sentence. 18 U.S.C. § 3553(a)(4); *see also Booker*, 2005 WL 50108 at \* 16 (noting that the federal sentencing guidelines are but one of many statutory concerns that federal courts must take into account during sentencing determinations). Thus, as a matter of guideline interpretation, we will briefly address Oliver's claim that his flight from CAP did not qualify as an obstruction of justice under the federal sentencing guidelines.

U.S.S.G. § 3C1.1 provides for a two-level sentence enhancement if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." Application Note 4 of this Guideline is a non-exhaustive list of the types of conduct which qualify as an obstruction of justice and includes "escaping or attempting to escape from custody before trial or sentencing . . ." U.S. SENTENCING GUIDELINES MANUAL § 3C1.1, cmt. n.4(e) (2004). Absconding from a halfway house qualifies as escape from custody for the purpose of U.S.S.G. § 3C1.1.[4] *See, e.g., Hayes v. United States*, 281 F.3d 724 (8th Cir 2002); *United States v. Swanson*, 253 F.3d 1220 (10th Cir.), *cert. denied*, 534 U.S. 1007 (2001); *United States v. Draper*, 996 F.2d 982 (9th Cir. 1993). Oliver's flight from CAP may thus be considered an obstruction of justice pursuant to U.S.S.G. § 3C1.1.[5]

## III. CONCLUSION

We conclude that the district court plainly erred by increasing Oliver's sentence pursuant to the federal sentencing guidelines in violation of the Sixth Amendment. Therefore, we **VACATE** Oliver's sentence and **REMAND** for re-sentencing in light of this opinion and the Supreme Court's opinion in *Booker*. As to the other errors raised by the defendant, we **AFFIRM** the district court's judgment.

---

[4] Oliver asserts that his flight does not qualify as an obstruction of justice within the meaning of U.S.S.G. § 3C1.1, because he never "missed any scheduled judicial proceedings" or actively hid from law enforcement. Appellant's Br. at 24. Oliver is correct in asserting that in some cases where the two-level enhancement was applied defendants have missed court proceedings or actively evaded capture. *See, e.g., United States v. Pasek*, No. 02-8085, 2003 WL 21437211 (10th Cir. June 23, 2003) (after his escape the defendant stole a car and committed bank robbery). In these cases, however, courts have focused not on a defendant's actions after the defendant has absconded, but rather on the mere fact of flight from custody. Whether an obstruction of justice enhancement was properly applied did not hinge on whether a court date was missed or a crime was committed during flight. *See Pasek*, 2003 WL 21437211 at \* 3 ("[t]hat the sentencing hearing was not delayed by [Defendant's] escape . . . is of no avail to Defendant"). That these factors are immaterial to an obstruction of justice determination is evidenced by the fact that the sentence enhancement can be imposed even where the district court determines that the defendant merely attempted to escape from custody. U.S. SENTENCING GUIDELINES MANUAL § 3C1.1, cmt. n.4(e) (2004); *see also United States v. Wiseman*, 172 F.3d 1196, 1218 (10th Cir.), *cert. denied,* 528 U.S. 889 (1999) (upholding two-level obstruction of justice enhancement for attempted escape).

[5] We leave it up to the district court to determine whether such a sentencing enhancement ought to be applied now that the federal sentencing guidelines are merely advisory.