File Name: 05a0245n.06
Filed: April 1, 2005

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

NO. 04-1163

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| JACQUELYNN MICHELLE EGELER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: GILMAN and COLE, Circuit Judges; and POLSTER, District Judge.[1]

**Dan Aaron Polster, District Judge.** Defendant Jacquelynn Michelle Egeler appeals her

sentence of thirty-seven months imprisonment, imposed by the district court following her

conviction by guilty plea for possession with intent to distribute 3,4-

methylenedioxymethamphetamine ("MDMA"), commonly known as "ecstacy," in violation of 21

U.S.C. §§ 841(a)(1) and 841(b)(1)(C). For the reasons set forth below, we **VACATE** Defendant's

_____

[1]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of
Ohio, sitting by designation.

sentence and **REMAND** the case for resentencing.

**I.**

Defendant Jacquelynn Egeler was arrested on May 16, 2002, following an investigation of her activities of traveling to Canada to purchase and import ecstacy for sale in the United States. On June 26, 2003, the Grand Jury for the Western District of Michigan returned an Indictment charging her with one count of possession with intent to distribute ecstacy, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Egeler entered a guilty plea on July 14, 2003. During the plea colloquy, Egeler admitted that she purchased 1350 pills containing ecstacy in Canada, and that she distributed 500 of those pills to a third party in Michigan before she was apprehended by law enforcement officers.

Following her guilty plea, the United States Probation Department prepared a presentence report ("PSR") concluding that the United States Sentencing Guidelines' range for Egeler's offense would be 46 to 57 months imprisonment, based on offense level 23, criminal history category I. The Probation Officer calculated the offense level based on the following factors: First, laboratory testing of the pills found in Egeler's vehicle revealed that 820 pills contained 233.21 grams of ecstacy, and 26 pills contained 6.84 grams of pure methamphetamine. Under the Drug Equivalency Tables, these drugs comprised the equivalent of 130.28 kilograms of marijuana.[2] Egeler was also held responsible for the 500 pills she delivered to a third party, which, under U.S.S.G. § 2D1.1, comment. (n. 11), is the equivalent of 62.5 kilograms of marijuana. Because her offense involved a total of 192.78 kilograms of marijuana equivalent, the Probation Officer determined that Egeler's

---

[2]Pursuant to the Drug Equivalency Table located at U.S.S.G. § 2D1.1 and application n. 10, 1 gram of MDMA is equivalent to 500 grams of marijuana, and 1 gram of methamphetamine is equivalent to 2 kilograms of marijuana.

base offense level was 26 under 21 U.S.C. § 841(a)(1) and United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(7). Second, according to the PSR, Egeler merited a two-level enhancement under U.S.S.G. § 2D1.1(b)(4) for importing methamphetamine from Canada, and a two-level deduction under the "safety valve" provision of U.S.S.G. § 5C1.2, giving her an adjusted offense level of 26. Third, the Probation Officer recommended that Egeler receive a two-level reduction under U.S.S.G. § 3E1.1(a) for acceptance of responsibility, and a one-level reduction under U.S.S.G. § 3E1.1(b) for entering a timely guilty plea. When all modifications were complete, Egeler had a total offense level of 23 and a criminal history category of I, producing a Guidelines' range of 46 to 57 months. The Probation Officer also noted that, although Egeler's attorney identified Egeler's childhood history of sexual abuse as grounds for a downward departure from the prescribed Sentencing Guidelines, there was no information concerning the offense or the offender that would warrant such a departure.

Prior to the sentencing hearing, Egeler's counsel filed written objections to the PSR. She objected to the two-level enhancement recommended by the Probation Officer for importing methamphetamine because she pled guilty only to possession with intent to distribute ecstacy and it was her intent to purchase only ecstacy. She also objected to the Probation Officer's failure to recommend a § 5K2.0 downward departure, and asked for permission to supplement the record to reflect more accurately her history of abuse and her efforts to rehabilitate herself.

The Probation Officer subsequently filed an Addendum to the PSR, taking a position adverse to Egeler's challenge to the two-level enhancement under § 2D1.1(b)(4). The Probation Officer noted, however, that, should the district court sustain this particular objection, Egeler's total offense level would decrease from 23 to 21. With a total offense level of 21 and a criminal history category

3

of I, the Guidelines range would be 37 to 46 months.

At the sentencing hearing held on January 16, 2004, the district court sustained Egeler's objection to the two-level enhancement under § 2D1.1(b)(4). However, the court denied her request for a § 5K2.0 downward departure based on her history of sexual abuse – recognizing that it was "compelling, horrible, [and] criminal," but insufficient to mitigate her culpability for her admitted criminal behavior. He stated, nonetheless, that he would use that information in fashioning an appropriate sentence.[3] He then imposed the lowest sentence of imprisonment for the applicable guideline range, or 37 months. Egeler appeals from this sentence.

## II.

On appeal, Egeler argues that the United States Supreme Court's decision in *Blakely v. Washington*, 124 S.Ct. 2531 (2004), requires remand so that the district court can, in her own words, "determine what the sentence would be if the [federal sentencing] guidelines were merely advisory especially in light of an allegedly confusing and ambiguous record below regarding the [sentencing] judge's intent." Egeler admits that she failed to object to her sentence below and that, therefore, her sentence should be reviewed only for plain error. To establish plain error, a defendant must demonstrate (1) an error, (2) that is plain, and (3) affects substantial rights. *United States v. Oliver*, 397 F.3d 369, 375 (6th Cir. Feb. 2, 2005) (citation omitted). If all three conditions are met, the court "may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. (quoting *Johnson v. United*

---

[3]The district court ordered that Egeler receive mental health counseling to address her early childhood issues, and that she receive vocational counseling and education. He also stated that he had no objection to an early furlough for the benefit of bonding with her infant child.

*States*, 520 U.S. 461, 466 (1997)) (internal quotation omitted).

In *Blakely v. Washington*, the Supreme Court held that the State of Washington's mandatory sentencing guidelines scheme, which authorized a judge to impose sentence enhancements based on facts neither admitted by the defendant nor found by the jury, violated the defendant's Sixth Amendment right to trial by jury. 124 S.Ct. at 2534-38. While the instant case was pending on direct review, the Supreme Court issued *United States v. Booker*, 125 U.S. 738 (2005). In *Booker*, the Supreme Court found "no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue [in *Blakely*]." 125 S.Ct. at 749. Justice Breyer, delivering the opinion of the court in part, held that those provisions of the Federal Sentencing Act that made the Guidelines mandatory should be excised as incompatible with the Sixth Amendment jury-trial right. *Id*. at 756. Although district courts are no longer bound by the Guidelines, they must consult the Guidelines and take them into account at sentencing. *Id*. at 767. Finally, *Booker* must be applied to all cases on direct review. *Id*. at 769 (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)).

The instant case does not involve a Guidelines sentence enhancement; thus, there is no Sixth Amendment violation. The Sixth Circuit recently held, in a case that did not present a Sixth Amendment violation, that a district court commits error that is plain and affects substantial rights when it sentences a defendant under the pre-*Booker* mandatory Guidelines regime – which the district court in this case clearly treated as mandatory. *See United States v. Barnett*, 398 F.3d 516, 525-26 (6th Cir. 2005) (presuming the third "prejudice" element where it would be "exceedingly difficult" for a defendant to show that his sentence would have been different if the district court had

5

sentenced him under the advisory Guidelines framework). "We would be usurping the discretionary power granted to the district courts by *Booker* if we were to assume that the district court would have given [the defendant] the same sentence post-*Booker*. *Barnett,* 398 F.3d at 530 (quoting *United States v. Oliver*, 397 F.3d at 381 n.3; and citing *Williams v. United States*, 503 U.S. 193, 205 (1992)). The *Barnett* court concluded that it would be "fundamentally unfair," under the fourth element of the plain-error test, to allow Barnett's sentence, imposed under a mandatory Guidelines regime, to stand in light of *Booker*. *Barnett*, 398 F.3d at 530. Accordingly, the *Barnett* court declined to consider the reasonableness of Barnett's by-the-book Guidelines sentence without first giving the district court the opportunity to re-sentence Barnett under the new advisory Guidelines scheme. *Id*.

We note that the district court in *Barnett* sentenced the defendant to the middle of the applicable Guidelines range, after expressing its concern over the defendant's prior history of five aggravated burglary convictions.[4] The Sixth Circuit explained, nonetheless, that

> [the] fundamental difference between the pre- and post-*Booker*
> sentencing frameworks illustrates our deep concern with speculating,
> based merely on a middle-of the-range sentence imposed under the
> mandatory Guidelines framework, that the district court would not
> have sentenced Barnett to a lower sentence under the advisory
> Guidelines regime. That the district court chose to sentence Barnettt
> in the middle of that mandatory range does not necessarily suggest

---

[4]Barnett was convicted by a jury of the charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). At the sentencing hearing, the district court calculated Barnett's base offense level for the felon-in-possession charge to be 24, added 2 points for possession of a stolen firearm under U.S.S.G. § 2K2.1(b)(4) and 2 points for reckless endangerment during flight under § 3C1.2, yielding an adjusted offense level of 28. Because Barnett had been previously convicted of at least three aggravated or violent felonies, the district court was required to sentence him as an armed career criminal, increasing his offense level to 33 under U.S.S.G. § 4B1.4. The court imposed a statutory mandatory minimum of 180 months of imprisonment under 18 U.S.C. § 924(e). With a criminal history category of VI and an offense level of 33, the applicable Guidelines sentencing range was 235-292 months. The judge sentenced Barnett to 265 months.

6

> that the district court would not feel that 265 months of imprisonment is the proper sentence for Barnett. Nor does it suggest that the court would not have sentenced Barnett to a lower sentence if it had the discretion, which it does not, to apply the Guidelines in an advisory fashion.

*Barnett*, 398 F.3d at 528. We find that the facts of the instant case are more compelling than those presented in *Barnett*, because here the district court sentenced Egeler to the low end of the applicable Guidelines range.

Egeler repeatedly stated, in her appellate brief and her letter brief, that the district court "granted in part and denied in part" her request, under U.S.S.G. § 5K2.0, for a downward departure. The record is clear, however, that the district court denied her request for a downward departure, finding that her unfortunate background failed to mitigate her culpability for an offense she admitted to committing on more than one occasion. In any event, the district court's ruling denying Egeler's request for a § 5K2.0 downward departure is not appealable. *United States v. Burke*, 237 F.3d 741, 743 (6th Cir. 2001) (citing *United States v. Byrd*, 53 F.3d 144, 145 (6th Cir. 1995)).

Finally, the government argues in its letter brief that it disagrees with the *Barnett* court's holding that prejudice should be presumed under the plain-error test; that it is seeking rehearing of *Oliver*; and that the better approach is to require the defendant to satisfy her traditional burden under the plain-error standard of showing a reasonable probability that the result would have been different but for the error, as the Eleventh Circuit has held in two post-*Booker* cases. However, we are constrained to follow *Barnett* and believe that it is, in the end, the more practical way of handling criminal cases on direct review following *Booker*. *See also United States v. Williams*, No. 03-6493, 2005 WL 513506 (6th Cir. Mar. 3, 2005) (remanding for re-sentencing despite absence of Sixth Amendment violation); *United States v. Howard*, No. 04-5240, 2005 WL 612121 (6th Cir. Mar. 17,

2005) (holding same); *United States v. McCraven*, No. 03-6311, 2005 WL 608263 (6th Cir. Mar. 17, 2005) (holding same).

## III.

Accordingly, we **VACATE** the sentence and **REMAND** the case for re-sentencing.