NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0756n.06
Filed: August 29, 2005

Case No. 04-1520

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| BRIAN MATTHEW CLARKSON, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: KEITH, BATCHELDER, and COLE, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Defendant-Appellant Brian Clarkson ("Clarkson") appeals his sentence for interfering with a flight crew under 49 U.S.C. § 46504. Clarkson argues that his sentence, which included an enhancement for recklessly endangering an aircraft, involved judicial factfinding in violation of the Sixth Amendment. Clarkson also argues that the evidence was insufficient to support a finding that he recklessly endangered an aircraft under U.S.S.G. § 2A5.2(a)(2)(A), and that the district court should be instructed to resentence him without any such enhancement. Because Clarkson's sentence included an enhancement based on judge-found facts, *United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005), requires that we remand for re-sentencing. We reject as meritless Clarkson's claim that the evidence cannot support the enhancement for recklessly endangering an aircraft.

## BACKGROUND

Clarkson and his wife were passengers on a flight from Italy to Detroit.  About three hours into the seven-hour flight, a flight attendant noticed Clarkson pouring himself wine from his own bottle, and told him to put the bottle away.  By this time, Clarkson already had been served three or four drinks by the airline.  In the ensuing minutes, Clarkson began to hit his wife and argue with her, all the while uttering loud profanities.  He was admonished to remain quiet or the authorities in Detroit would be contacted.  The verbal abuse continued until flight attendants separated Clarkson from his wife.  The plane's Captain was advised of the situation and the steps taken to deal with it.

Undeterred, Clarkson attempted to open another bottle of wine and was once again scolded. He then lit a cigarette and began smoking in his seat, requiring a flight attendant to confiscate the cigarettes and lighter.  Clarkson was told that the authorities would be contacted and that, if necessary, the flight crew had handcuffs on board.  When told of the handcuffs, Clarkson jumped up from his seat and into the aisle, thrust his hands above his head with wrists crossed, and screamed, with profanities, that he wished to be treated like a criminal and handcuffed.  Clarkson refused to sit down or lower his arms.  The lead flight attendant consulted with the Captain, and they decided that Clarkson should be handcuffed.  Flight attendants cuffed him with plastic cuffs and sat him in his seat.  Clarkson then complained loudly, using still more profanity, that the cuffs were too tight and cutting off his circulation.

Because the passengers around Clarkson were becoming visibly uncomfortable, flight attendants moved him to the "break seats," which are located near the cabin door and typically used by the flight attendants.  Clarkson continued to complain that the cuffs were too tight, and so the flight crew applied another pair more loosely.  But Clarkson continued to complain loudly and profanely, and began slamming his head violently against the plane's fuselage.  The flight attendants

2

attempted to restrain Clarkson by placing seat belt extensions around his chest and around the seat, but he managed to free himself from this restraint and from the handcuffs. It took several flight attendants, and even a few passengers, to once again restrain Clarkson. In the process, Clarkson kicked one of the flight attendants, forcing him against the opposite seat. The emergency door was close by, and, according to one witness, Clarkson tried unsuccessfully to grab the handle. The lead flight attendant and the Captain had several conversations in which they discussed landing the plane early, but ultimately decided that they were close enough to Detroit that an early landing was not the best option.

Some four or five hours after Clarkson began this ruction, the plane landed in Detroit. Clarkson was arrested on the spot by airport police and placed in a holding cell where, once again, he started banging his head against the wall. He was eventually taken into custody by the Federal Bureau of Investigation ("FBI"). Clarkson told the FBI that he had consumed roughly six airline-size bottles of liquor. He stated that he remembered raising his voice but recalled little else, and that he had never experienced a black-out episode before. Clarkson's blood-alcohol level was measured at 0.134 approximately six or seven hours after his last drink. In an interview conducted the following day, Clarkson remembered freeing himself from the handcuffs, being surrounded by flight attendants, and banging his head against the wall of the airport's holding cell.

Clarkson was indicted on three counts relating to his conduct during the flight: one count of interfering with a flight crew under 49 U.S.C. § 46504, and two counts of assault (one of a passenger, one of a flight attendant) under 18 U.S.C. § 113. Clarkson eventually pled guilty to the one count of interfering with a flight crew. The other two counts were dismissed by the government pursuant to the oral plea agreement.

The Pre-Sentence Report ("PSR") recommended a base offense level of 18, which included an enhancement for recklessly endangering the safety of an aircraft under U.S.S.G. § 2A5.2(a)(2)(A), and suggested a three-point reduction for acceptance of responsibility. The PSR thus recommended a final offense level of 15, which resulted in a guideline-range sentence of 18 to 24 months' imprisonment. Clarkson objected to the enhancement for recklessly endangering the aircraft, arguing that the facts did not support such a finding, but the court overruled the objection, stating that the "totality of the circumstances" warranted such a finding. Clarkson also made a motion for downward departure based on a number of factors, including aberrant conduct, post-offense rehabilitation, and diminished mental capacity. In support of this motion, Clarkson submitted a psychological report that stated that Clarkson had certain psychological disorders that caused alcohol to affect him differently than "normal" drinkers, weakening his capacity for intentional behavior. In other words, Clarkson argued that he could not have recklessly endangered the flight because he could not have formed the requisite intent.

The court did not expressly rule on the motion for downward departure, but assessed punishment in accordance with the offense level of 15 indicated in the PSR. The judge sentenced Clarkson to 18 months' imprisonment, at the bottom of the 18-to-24-month guideline range for a 15 offense level, criminal history I. Clarkson timely appealed.

## ANALYSIS

### I. Re-sentencing Under *Booker*

Clarkson's primary argument is that his sentence violated his constitutional rights because it was based, in part, on judge-found facts under a preponderance of the evidence standard. In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory federal

4

sentencing guidelines violated the Sixth Amendment by requiring judges to enhance the sentences of defendants based on facts not found by a jury or admitted by the defendant. To remedy this problem, the Court excised from the Sentencing Act the provisions making the guidelines mandatory. *Booker* instructs reviewing courts to apply its Sixth Amendment holding and its remedial interpretation of the Sentencing Act to all cases on direct review. *Id.* at 769. *Booker* further mandates that reviewing courts apply ordinary prudential doctrines, such as plain error review, to determine if re-sentencing is warranted. *Id.*

Clarkson's sentence was enhanced, pursuant to the mandatory federal sentencing guidelines in place at the time, based on facts found by the sentencing judge: namely, that Clarkson's conduct recklessly endangered the aircraft pursuant to U.S.S.G. § 2A5.2(a)(2)(A). Thus, Clarkson's sentence violates the Sixth Amendment under *Booker*. Since Clarkson failed to make a Sixth Amendment objection at sentencing, however, we conduct plain error review to determine if he must be re-sentenced. Under that test, "there must be (1) 'error,' (2) that is 'plain,' and (3) and that 'affect[s] substantial rights.'" *United States v. Oliver*, 397 F.3d 369, 378 (6th Cir. 2005). If these three conditions are met, an appellate court may then exercise its discretion to notice the forfeited error, "but only if (4) the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (internal citation omitted).

Clarkson's sentence in violation of the Sixth Amendment constitutes error that is plain. *See id.* at 378-79. Moreover, according to this circuit's precedent in *United States v. Oliver*, a sentence enhancement based on judge-found facts under a mandatory guidelines system necessarily affects

5

Clarkson's substantial rights.[1]  *See id.* at 379-80.  Finally, *Oliver* dictates that any sentencing error

that leads to a violation of the Sixth Amendment by imposing a more severe sentence than is

supported by the jury verdict automatically diminishes the integrity and reputation of the judicial

system.  *Id.* at 380.  Therefore, Clarkson's case must be remanded for re-sentencing.

## II.    Reckless Endangerment

Clarkson also argues that the facts of his case do not support a finding of reckless

endangerment under U.S.S.G. § 2A5.2(a)(2)(A) and therefore asks us to instruct that, on remand,

the district court should not apply such an enhancement in determining Clarkson's sentence.

Specifically, Clarkson argues that his conduct did not endanger the aircraft, and that even if it did,

his level of intoxication rendered him incapable of forming the requisite intent to behave recklessly.

We are not persuaded by these arguments.

For Clarkson to be eligible for an 18 offense level under § 2A5.2(a)(2)(A), the district judge

must determine that his offense "involved recklessly endangering the safety of . . . an airport or an

aircraft."  Clarkson argues that the aircraft was never actually in any danger, but we cannot agree.

Clarkson was violent and verbally abusive toward his wife and flight attendants, had to be physically

restrained on several occasions (with the help of passengers), required a significant amount of the

flight crew's time and attention for a four-to-five-hour period, and caused the Captain to consider

---

[1]Speaking only for myself, I note my disagreement with *Oliver*'s unwarranted departure from traditional plain error review.  Despite purporting to apply plain error review, *Oliver* fails even to discuss, much less enforce, the defendant's traditional burden of proving that the district court's error prejudiced him.  *Oliver* reasoned that since the defendant received a sentence "beyond that which was supported by the jury verdict and [his] criminal history," he was necessarily prejudiced because he "*arguably* received a sentence that was longer than his sentence would have been absent a Sixth Amendment violation."  *Oliver*, 397 F.3d at 379-80 (emphasis added).  "Arguably" is not enough, however.  Under the ordinary plain error review that *Booker* requires, 125 S. Ct. at 769, a defendant bears the burden of proving that he was prejudiced by the error, *United States v. Olano*, 507 U.S. 725, 734 (1993): i.e., that absent that error, he would more likely than not have received a lower sentence.  By simply ignoring this requirement, *Oliver* effectively holds that every Sixth Amendment violation in a *Booker*-type case automatically prejudices a defendant, a holding that does not comport with Supreme Court precedent.

landing the plane early to have him removed. The professionals who were supposed to be ensuring a safe flight were—at least part of the time—busy dealing with Clarkson's angry antics. Even putting aside, as the district court did, the disputed allegation that Clarkson grabbed at the emergency door such that it needed to be duct-taped, we find no error in the district court's determination that Clarkson's behavior placed the aircraft in danger.

Clarkson's other argument is that, even if his behavior endangered the flight, he did not have the requisite intent to behave "recklessly" for purposes of § 2A5.2(a)(2). Clarkson relies on a psychological report and his high level of intoxication as evidence that he did not appreciate the risks of his behavior at the time of the incident. Section 2A5.2(a)(2) does not define reckless behavior, but Clarkson suggests we adopt the definition in § 2A1.4, Application Note 1, which defines reckless as referring to "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." The government objects to the use of this definition, but argues that even under the § 2A1.4 standard, Clarkson's behavior was clearly reckless.

First, we note that Clarkson admits to a long history of problems resulting from his use of alcohol, which is detailed in the very psychological report he submits on his own behalf. This history, combined with the patently obvious danger resulting from violent, uncontrollable behavior aboard an aircraft, convinces us that Clarkson was sufficiently aware of the serious risk posed by his conduct when he made the sober decision to start drinking aboard the aircraft, such that he meets the § 2A1.4 standard.

7

Moreover, in *United States v. Jenny*, 7 F.3d 953 (10th Cir. 1993), the Tenth Circuit emphasized that the recklessness standard requires foreseeability of the possible consequences of one's behavior, rather than actual intent that the bad behavior occur. The Tenth Circuit then went on to hold that a flight passenger who had a history of violent and abusive drunken behavior met the foreknowledge requirement for recklessness when he chose to get drunk before his flight, and thus warranted application of the § 2A5.2(a)(2) enhancement. Similarly, Clarkson should have foreseen the risks of his drinking aboard an aircraft when he made the decision to drink, and thus his decision meets the recklessness standard.

The government also points out, quite reasonably, that § 2A5.2(a) contains separate offense levels for intentional and reckless endangerment of an aircraft: § 2A5.2(a)(1) assigns a 30 offense level for intentionally endangering an aircraft, while § 2A5.2(a)(2) assigns an 18 offense level for recklessly endangering an aircraft. Clarkson's sentence was calculated under the lower recklessness standard, yet his argument on appeal, at times, seems better suited to the higher standard of intentional endangerment. Clarkson need not have intended his violent behavior, nor even been aware of it at the time, to have behaved recklessly. Because Clarkson should have known that his inebriation could result in his belligerent, uncontrollable behavior on the flight, the district court did not err in concluding that Clarkson behaved recklessly when he nonetheless chose to get drunk. Clarkson's contention that the district court should be instructed, on remand, to calculate the offense level without any finding of recklessness is without merit.

## CONCLUSION

Accordingly, we **VACATE** Clarkson's sentence and **REMAND** his case for re-sentencing.

8

**R. Guy Cole, Jr., Circuit Judge, concurring.**  I concur in the opinion authored by Judge Batchelder; however, I do not concur in, and specifically note my disagreement with, footnote one of that opinion.

**DAMON J. KEITH, Circuit Judge.** Joins in Judge Cole's separate concurrence only.