NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0241n.06
Filed: April 1, 2005

No. 03-2359

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellee,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| MICHAEL NICKSON, | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellant.** | ) | |

BEFORE: NORRIS, BATCHELDER, and ROGERS, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** Defendant Michael Nickson appeals from his conviction on one count of money laundering, 18 U.S.C. § 1956(a)(1)(B)(i), and from the sentence imposed upon him. Specifically, he challenges the conviction for sufficiency of the evidence. He also argues that the district court improperly admitted evidence of prior bad acts, failed to give jury instructions limiting the use of that evidence, and miscalculated the amount of restitution.

**I.**

Defendant was indicted along with three other individuals for defrauding the City of Detroit's Public Lighting Department by charging it for millions of dollars worth of pumping equipment, some of which resulted from overcharges, and some of which resulted from failure to deliver the equipment. On the morning of the trial, Nickson pleaded guilty to ten counts of mail fraud, 18 U.S.C. § 1341, conspiracy to commit mail fraud, 18 U.S.C. § 371, more than sixty counts

of illegally structuring financial transactions, 31 U.S.C. § 5324, and three counts of submitting

fraudulent federal tax returns, 26 U.S.C. § 7206(1). He went to trial on a single count of money

laundering, 18 U.S.C. § 1956(a)(1)(B)(i), which alleged that he attempted to conceal the origin of

certain funds illegally obtained by Four Star Industries, a company that he controlled, by purchasing

a property on Doxator Street in Dearborn Heights, Michigan in the name of his girlfriend.

During trial, the district court admitted evidence, in the form of a document entitled

"stipulation" that was read to the jury, which summarized defendant's guilty plea on the multiple

counts of "structuring financial transactions" to avoid reporting requirements. The district court

cautioned the jury, however, that it must consider this evidence in a limited fashion:

> Mr. Nickson is on trial in this case only on money—on the Money Laundering charge. As to this charge, you may consider his guilty plea to the 67 counts of Structuring Financial Transactions as it may bear upon his intent to conceal proceeds from illegal transactions or sources, which the Government must prove as part of its Money Laundering charge. However, the structuring itself cannot form the basis for the illegal source requirement of the Money Laundering charge.

> If you find that Mr. Nickson's sole purpose in putting the Doxator house in his girlfriend's name was to conceal the purchase from his wife, rather than concealing ill-gotten proceeds, then you may not consider the structuring.

> Let me read that again. You may not consider the structuring transactions in deciding the Money Laundering count. If, however, you find that one of Mr. Nickson's purposes in putting the home in his girlfriend's name was to conceal illegal proceeds, then you may consider the structuring transactions as they may bear upon his intent in Money Laundering.

Defendant requested no further instruction. Although the district court's final jury instructions required that the jury consider all instructions, "before the trial and during the trial, as well as these instructions . . . together as a whole," it did not repeat the limiting instructions quoted above in its final instructions. Defendant lodged no objection to the court's final instructions. The court also permitted testimony regarding defendant's tax evasion, not to demonstrate intent, but because "circumstantially it's proof that the [withdrawn] funds, themselves, were the product of illegal activities."

After the jury found defendant guilty, the district court sentenced him to 57 months of imprisonment, two years of supervised release, imposed an assessment of $8,300.00, and ordered payment of restitution in the amount of $2,223,697.64, a figure that he challenges on appeal.

**II.**

*1. Sufficiency of the Evidence*

Defendant contends that the evidence introduced at trial was insufficient to support his conviction beyond a reasonable doubt. The standard of review for a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). When considering the evidence, we must allow the government the benefit of all reasonable inferences and must "refrain from independently judging the credibility of witnesses or weight of the evidence." *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996) (citations omitted).

Defendant stands convicted of "concealment" money laundering, which prohibits the following:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts . . . such a financial transaction which in fact involves the proceeds of specified unlawful activity—
> . . . .
>
> > (B) knowing that the transaction is designed in whole or in part—
> >
> > > (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds . . .
> >
> > shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956. This court has parsed the elements of "concealment" money laundering in these terms:

> (1) use of funds that are proceeds of unlawful activity; (2) knowledge that the funds are proceeds of unlawful activity; and (3) conduct or attempt to conduct a financial transaction, knowing that the transaction is designed in whole or in part to disguise the . . . source, ownership or control of the proceeds.

*United States v. Marshall*, 248 F.3d 525, 538 (6th Cir. 2001) (quoting *United States v. Prince*, 214 F.3d 740, 747 (6th Cir. 2000)). Defendant challenges the government's evidence as insufficient for two reasons: (1) the government failed to prove beyond a reasonable doubt that the funds used to purchase the Doxator Street house were proceeds of illegal activity, and (2) the government failed to prove beyond a reasonable doubt that defendant bought the house in whole or in part to disguise

- 4 -

the source, ownership, or control of the proceeds from the government. We discuss each objection in turn.

This court has held that the government need not trace funds garnered illegally to their use in a money-laundering scheme on a dollar-for-dollar basis on the theory that money-launderers would be permitted to evade sanctions by commingling illegal assets with legitimate earnings. *See United States v. Bencs*, 28 F.3d 555, 562 (6th Cir. 1994). Under the terms of the money-laundering statute, the government only must demonstrate beyond a reasonable doubt that the alleged money-laundering transaction "in fact involves the proceeds of specified unlawful activity[.]" 18 U.S.C. § 1956(a)(1). This court has not formulated a precise test for determining when such illegally garnered funds can be said to have been "involved" in a transaction, and defendant directs us to an approach adopted in the Fifth Circuit: "[W]here an account contains clean funds sufficient to cover a withdrawal, the Government can not prove beyond a reasonable doubt that the withdrawal contained dirty money." *United States v. Loe*, 248 F.3d 449, 467 (5th Cir. 2001). Even under this test, however, the government has proven that illegally garnered funds were "involved" in the purchase of the Doxator Street house.

The government's evidence demonstrates that the Doxator Street house was purchased for $106,000 on October 15, 1998. The account from which that amount was drawn was opened in mid-September 1998 with around $204,000. In order to open this account, Nickson closed a different account, 70-75% of which consisted of illegally-obtained funds, and transferred its contents. At most, therefore, $61,200 of the funds transferred into the account were "clean." Deposits into the account thereafter consisted of 90% illegally obtained funds.

Although no specific evidence was introduced to establish the total amount of money in the account on the date of the down payment, withdrawals over the two-month period preceding the down payment totaled $474,000[1]. Viewing this evidence in the light most favorable to the government, a rational juror could assume that the amount in the account was sufficient to cover the numerous withdrawals totaling $474,000 and the $106,000 house payment. Thus, the account, over a short period of time, made payments of approximately $580,000, the first $204,000 of which consisted of at most 30% "clean" money, and the remainder consisting of 10% "clean" money, for a total of $98,800 in "clean" money. That amount is insufficient to cover the $106,000 down payment. Hence, sufficient evidence existed to support the jury's conclusion that illegally obtained funds were "involved" in the down payment on the Doxator Street house.

We now must determine whether sufficient evidence existed for a reasonable jury to conclude that defendant intended that the "transaction [be] designed in whole or in part to . . . disguise the . . . source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i). This court has adopted a non-exclusive list of types of evidence that could be used to demonstrate intent:

> [A] variety of types of evidence have been cited by this and other circuits as supportive of evidence of intent to disguise or conceal. They include, among others, statements by a defendant probative of intent to conceal; unusual secrecy surrounding the transaction; structuring the transaction in a way to avoid attention; depositing illegal profits in the bank account of a legitimate business; highly irregular features of the transaction; using third parties to conceal the

---

[1]Because the contents of the original account were transferred into the account created in September, the transactions made in the original account during the period directly preceding the transfer may be considered as arising out of the September account.

> real owner; a series of unusual financial moves culminating in the
> transaction; or expert testimony on practices of criminals.

*Marshall*, 248 F.3d at 539 (quoting and adopting *United States v. Garcia-Emanuel*, 14 F.3d 1469, 1475-76 (10th Cir. 1994)). In this case, the government proved intent by demonstrating that defendant took steps to conceal the transaction, having paid for the down payment with a check that did not include his name or the name of his business, and having put the house entirely under his girlfriend's name. In addition, the jury could infer that, because defendant had engaged in multiple instances of "structuring financial transactions" to avoid reporting requirements, he had a similar motive to conceal illegally obtained funds through the purchase of the property.

*2. Propriety of Admitting Guilty Plea and Tax Evasion Evidence*

Defendant contends that informing the jury of his guilty pleas with respect to structuring financial transactions, coupled with evidence of tax evasion, was not probative of intent, as required by Fed. R. Evid. 404(b), and was unfairly prejudicial under Fed. R. Evid. 403.

Defendant advances three arguments: 1) he did not "open the door" to evidence proving intent by claiming that he sought to conceal his purchase of the Doxator Street house only from his wife; 2) because money-laundering is not a continuing offense, his past intent could not be used as evidence of his intent regarding the Doxator Street house down payment; and 3) less prejudicial evidence of intent was available from defendant's later transfer of property to his sister following a search of his home. These arguments fail.

In support of his first argument, defendant relies upon *United States v. Johnson*, 27 F.3d 1186 (6th Cir. 1994). In that case, we determined that other crimes evidence was not admissible to

prove intent unless 1) the defendant "places intent in issue," 2) "intent is not inferable from proof of the criminal act itself," or 3) specific intent is an element of the crime. *Id.* at 1191-92 (citation omitted). Here, defendant placed his intent in issue by arguing to the jury that he sought to conceal the Doxator Street house transaction from his wife, but not from the government. Accordingly, evidence of "other crimes" is proper to prove intent under Fed. R. Evid. 404(b) in these circumstances.

With respect to his second argument, defendant contends that money laundering requires the government to prove intent regarding a specific transaction; thus, his intent regarding earlier transactions, such as the 67 incidents of "structuring financial transactions," constitutes both irrelevant evidence and impermissible character evidence. He refers us to *United States v. Marshall*, *supra*, which held that withdrawals from a brokerage account that was created with the intent to conceal illegally garnered funds could not be used as evidence that the defendant bore an intent to conceal those funds in all subsequent withdrawals from that account. 248 F.3d at 540. The situation at bar is distinguishable. In *Marshall*, the defendant already had concealed the illegally garnered funds by creating a brokerage account; withdrawals from that account could not be said to have been made with the same intent as was present when the account was created. In the case at bar, however, the evidence of defendant's convictions for "structuring financial transactions" tends to show that he did not feel that he successfully had concealed the funds merely by placing them in bank accounts, and an inference could be drawn that the subsequent withdrawals from those accounts were motivated by a continuing intent to conceal. Accordingly, the evidence of the "structuring" transactions was not irrelevant, nor could it be said to constitute improper character evidence under

Fed. R. Evid. 404(a). Rather, that evidence demonstrated that defendant possessed an intent, when engaging in transactions with money withdrawn from his bank accounts, to conceal illegally garnered money.

Defendant's third argument fails because of chronology. The other, less prejudicial evidence that he suggests should have been sufficient proof of intent derived from an event that took place after the Doxator Street transaction was completed and occurred after investigators searched defendant's home. The fact that defendant transferred property into his sister's name in 2000, however, cannot be considered strong evidence of his intent to conceal illegally garnered funds in October of 1998. His intent to hide his assets following the search of his home in 2000 was more likely motivated by his knowledge that his home had been searched than by an intent to continue a pre-existing money-laundering scheme. The evidence of his engagement in past "structuring" transactions was therefore necessary to prove intent.

Having determined that the evidence at issue satisfies the "intent" requirement of Fed. R. Evid. 404(b), we now consider whether it was unduly prejudicial. Under Fed. R. Evid. 403, the district court is required to balance the probative value of the proffered evidence against its potential for unfair prejudice. The district court need not explain its balancing process where its analysis is "subsumed [by its] ruling admitting the evidence." *United States v. Acosta-Cazares*, 878 F.2d 945, 950 (6th Cir. 1989). The district court explained to the jury that it was admitting evidence of the guilty pleas to "structuring financial transactions" only for the purpose of permitting the jurors to ascertain defendant's intent. Limited to that purpose, the guilty plea evidence presented the only evidence of defendant's intent regarding his purchase of the Doxator Street house. Where evidence

presents the only means of proving an element of the offense, its probative value is high. *See United States v. Merriweather*, 78 F.3d 1070, 1078-79 (6th Cir. 1996). Although the risk of prejudice is also high when the jury is told that the defendant pleaded guilty to multiple counts of another financial crime, we conclude that the district court acted within its discretion in admitting the evidence. The court's stipulation to the jury regarding the proper use of the evidence emphasized that the jury ought not use it as the sole basis to determine the illegality of actions defendant took, an emphasis which indicates that the court considered the danger of unfair prejudice.

Evidence of tax evasion, on the other hand, was admitted not as evidence of intent, but because "circumstantially, it's proof that the [withdrawn] funds, themselves, were the product of illegal activities." As the court explained, "[t]he inference that is being laid here is these funds were not reported as part of income; the inference from that being they were illegally obtained." The jury was not informed that defendant had been convicted of tax evasion, only that he failed to report much of his income on his returns. Because the government presented other significant evidence that the funds were the product of mail fraud, this evidence has less probative value than does the guilty plea evidence. However, its potential prejudicial effect is also less than that of the guilty plea evidence; the jury was not told that, by under-reporting his income, defendant was guilty of anything. Accordingly, the district court did not commit an abuse of discretion in admitting the tax evasion evidence.

*3. Sufficiency of the Jury Instructions*

Defendant contends that the district court erred in failing to repeat its cautionary instructions regarding the limited use of the guilty plea evidence in its final jury instructions. Because defendant

did not object to these instructions at trial, we review their propriety for plain error. *United States v. Morrow*, 977 F.2d 222, 226 (6th Cir. 1992) (en banc).

The district court strongly admonished the jury to consider the guilty plea evidence to ascertain Nickson's intent alone. The final instructions commanded that the jury consider all instructions, "before the trial and during the trial, as well as these instructions[,]. . . together as a whole." Given the inclusion of this reminder, the failure to repeat the original cautionary instruction does not rise to the level of plain error.

*4. Propriety of the District Court's Restitution Award*

Defendant argues that the district court should not have rejected his accountant's evidence indicating that the $2,223,697.64 restitution award was too high, and that he was entitled to a full hearing on that issue. We review the amount of restitution for abuse of discretion. *United States v. Bearden*, 274 F.3d 1031, 1040 (6th Cir. 2001).

At the sentencing hearing, the district court considered arguments put forward by counsel for defendant respecting the amount of restitution. In the end, the district court found by a preponderance of the evidence that all the amounts paid by the victim were induced by fraud, as required under the restitution statute, 18 U.S.C. §§ 3663A(c)(1), 3664(e). Specifically, the district court concluded that defendant had not come forward with evidence that he had legitimate billings that should be used to offset the total amount of restitution.[2]

---

[2]Defendant also argued that because the Presentence Investigation Report sought only $2,046,350.64 in restitution, the district court's decision to impose restitution in the amount of $2,223,697.64 was error. Because the district court could safely assume the defendant would object equally to any figure higher than the $954,000 proffered by his accountant as the correct amount, the district court did not abuse its discretion.

We detect no abuse of discretion by the district court with respect to restitution[3].

5. *Sentencing in Light of* <u>United States v. Booker</u>

Prior to oral argument of this appeal, defense counsel filed a supplemental letter brief with this court arguing that the five-level enhancement assessed by the district court for the amount of loss violated his Sixth Amendment rights as defined in *Blakely v. Washington*, 124 S.Ct. 2531 (2004). This argument was not raised in front of the district court. Since defendant filed his letter brief, the Supreme Court has explicitly extended its reasoning in *Blakely* to the Federal Sentencing Guidelines. *United States v. Booker*, 125 S. Ct. 738 (2005). This court recently outlined the proper approach for applying *Booker* to criminal cases pending on direct appeal. *United States v. Oliver*, – F.3d –, 2005 WL 233779 (6th Cir. Feb. 2, 2005).

The pre-sentence report recommended that defendant's offense level be increased by six levels pursuant to U.S.S.G. § 2S1.1(b)(2)(G) (1995) because the amount of loss was more than $2,000,000.00 but less than $3,500,000.00. Counsel objected to this determination. During the sentencing hearing, the district court found by a preponderance of the evidence that the amount of loss with respect to the money laundering account was $1,266,313 and applied a five, rather than a six-level, increase to the offense level. Nonetheless, as pointed out by defendant in his letter brief, a five-level increase altered the recommended guidelines range.

Accordingly, we must vacate defendant's sentence and remand the matter to the district court with instructions to re-sentence in light of *Booker* and *Oliver*.

---

[3]We note that there is a question as to whether *U.S. v. Booker*, 125 S.Ct. 738 (2005) applies to restitution. Because defendant did not raise this issue before us, we will not decide it now. *See U.S. v. McDaniel*, – F.3d–, 2005 WL 366899 at *10 n.12 (6th Cir. Feb. 17, 2005).

**III.**

For the foregoing reasons, the conviction is **affirmed** but the sentence is **vacated** and the

cause **remanded** for further proceedings consistent with this opinion.