NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0757n.06
Filed: October 12, 2006

No. 05-1827

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MICHAEL NICKSON, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: GUY, SUTTON and ALARCÓN,[*] Circuit Judges.

PER CURIAM. Michael Nickson challenges the procedural and substantive reasonableness of his 57-month sentence. We affirm.

I.

In 2001, a Michigan grand jury indicted Nickson and three others for their role in defrauding the City of Detroit's Public Lighting Department. Nickson pleaded guilty to 10 counts of mail fraud, 18 U.S.C. § 1341; 1 count of conspiracy to commit mail fraud, 18 U.S.C. §§ 371, 1341; 67 counts of structuring financial transactions, 31 U.S.C. § 5324; and 4 counts of fraud and false statements,

_____

[*]The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

26 U.S.C. § 7206(1). He proceeded to trial on a single count of money laundering, 18 U.S.C. § 1956(a)(1)(B)(i), and the jury found him guilty.

In calculating Nickson's sentencing range under the then-applicable 1995 version of the guidelines, the district court grouped together the mail-fraud, conspiracy, structuring-financial-transactions and money-laundering counts. *See* U.S.S.G. § 3D1.2 (providing that counts "involving substantially the same harm" should be grouped together). Because money laundering yielded the highest offense level of the group—level 20—the court used it as the basis for calculating the overall offense level and corresponding sentencing range. *See* U.S.S.G. § 3D1.3 ("In the case of counts grouped together . . . the offense level applicable [is] the highest offense level of the counts in the [g]roup.").

Although the presentence investigation report concluded that Nickson had laundered more than $2 million, an amount that would result in a 6-level enhancement, *see* U.S.S.G. § 2S1.1(b)(2)(G), the court determined that the crime involved losses totaling $1,266,313 and applied a 5-level enhancement, *see* U.S.S.G. § 2S1.1(b)(2)(F). Over protests by the government, the court also granted Nickson a 2-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), resulting in an overall offense level of 23 with a sentencing range of 46 to 57 months. The judge sentenced Nickson to 57 months and ordered him to pay $2,223,697 in restitution.

Nickson appealed his money-laundering conviction and sentence. A panel of this court affirmed the conviction but remanded the case for resentencing in the aftermath of *United States v.*

*Booker*, 543 U.S. 220 (2005). *See United States v. Nickson*, 127 F. App'x 770, 777 (6th Cir. Apr. 1, 2005).

At resentencing, Nickson's attorney urged the district court to abandon its original approach to calculating Nickson's guidelines range. Instead of grouping the money-laundering and mail-fraud counts together (as the court had done the first time), Nickson's attorney asked the court to separate the money-laundering count from the mail-fraud offenses and calculate distinct sentencing ranges for each.

Persuaded by the attorney's recommendation, the court started at a base level of 20 for the money-laundering count, then increased the offense level to 21 based on the amount of money attributable to the money-laundering offense, which he determined to be $106,000. *See* U.S.S.G. § 2S1.1(b)(2)(B). The court refused to grant a 2-level reduction for acceptance of responsibility because Nickson never pleaded guilty to money laundering and instead was found guilty of it at trial.

The court then determined the applicable guidelines range for the mail-fraud counts: Beginning with a base level of 6 for mail fraud, the court applied an 11-level enhancement for loss exceeding $800,000, U.S.S.G. § 2F1.1(a)(1)(L), added 2 levels for more-than-minimal planning, U.S.S.G. § 2F1.1(a)(2), subtracted 2 levels for acceptance of responsibility and arrived at an offense level of 17.

Because the resulting offense levels for the money-laundering count and for the mail-fraud group were within 4 levels of each other, the district court applied a 2-level enhancement to the

money-laundering count (the crime with the highest offense level), *see* U.S.S.G. § 3D1.4, arriving—as it had the first time it sentenced Nickson—at an offense level of 23 and a sentencing range of 46 to 57 months. The court again sentenced Nickson to 57 months.

II.

Nickson attacks the procedural reasonableness of his sentence on two grounds. He argues that the district court should have grouped together the fraud, conspiracy, structuring-financial-transactions and money-laundering counts in calculating the applicable guidelines range. And he argues that the court improperly applied the 2-level reduction for acceptance of responsibility on an offense-by-offense basis rather than a combined-offense-level basis.

Because he did not raise these procedural arguments during resentencing—indeed, his counsel argued that the district court should not group the counts together as the court had done the first time—Nickson must satisfy the requirements of plain-error review to obtain relief. *See United States v. Olano*, 507 U.S. 725, 731–32 (1993); *see also* Fed. R. Crim. P. 52(b). Under this test, we initially must find "(1) [an] error, (2) that is plain, and (3) that affects substantial rights." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (internal quotations omitted). Then, if the defendant satisfies all three conditions, we may exercise our discretion to correct the error "only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

As the government concedes, the district court erred by failing to group Nickson's offenses together, *see* U.S.S.G. § 3D1.2, and erred by applying the reduction for acceptance of responsibility to each offense individually rather than to the overall offense level, *see* U.S.S.G. §§ 1B1.1(d) & (e). And as the government also concedes, each of these errors was plain.

In neither instance, however, can Nickson show that these errors affected his substantial rights. To "affect[]" a defendant's "substantial rights," we have held, the "error must have been prejudicial: It must have affected the outcome of the District Court proceedings." *United States v. Thomas*, 11 F.3d 620, 630 (6th Cir. 1993). There are at least three reasons why these errors did not affect the outcome of the district court proceedings. First, even though the district court misconstrued the guidelines in two respects, it still reached the correct offense level and corresponding sentencing range—precisely the same offense level (23) and guidelines range (46 to 57 months) that it had reached the first time it sentenced Nickson. Second, even though *Booker* gave the district court authority to vary the sentence below or above the advisory guidelines range, the court imposed the same sentence on Nickson that it had imposed the first time—57 months. Third, out of an abundance of caution, the court indicated that even if it had an opportunity to sentence Nickson a third time, it still would impose a 57-month sentence under the § 3553(a) factors. *See, e.g.*, JA 327 ("[E]ven if we had been at the 37 to 46 month guideline range in the money laundering . . . I would have enhanced the sentence to the 57 months that I gave Mr. Nickson when we were first together for sentencing for all of the reasons that I've already indicated."); JA 326 ("[I]f, indeed, the guidelines would have been different, I probably would have increased the

sentence beyond the guideline somewhat to get back to the 57 month[s], because of the factors that I've discussed."). Under these circumstances, Nickson cannot show that his substantial rights have been affected. *See United States v. Matheny*, 450 F.3d 633, 642 (6th Cir. 2006) ("Because [the defendant] cannot demonstrate prejudice . . . his substantial rights have not been affected.").

III.

Nickson also challenges the substantive reasonableness of his sentence. In reviewing such a challenge, the "question at hand is whether the sentence is reasonable in light of the § 3553(a) factors." *United States v. Davis*, 458 F.3d 491, 496 (6th Cir. 2006). Nickson has failed to supply a persuasive reason why the district court lacked discretion to issue this within-guidelines sentence.

The district court judge as an initial matter thoroughly considered the § 3553(a) factors. He contemplated "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1); *see* JA 315 ("[H]e's a first time offender and this seems to have been his first exposure to the criminal justice system. On the other hand, the nature of the circumstances of the offense are very serious. . . . This was not an opportunistic sort of one-shot crime. . . . [T]his occurred over an extended period of time with extended transactions."). He explained "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A); *see* JA 316 (stating that these three considerations "all counsel[ ] sentences at the higher end of the guideline range, because in my view, public corruption and the assistance in public corruption [are]

among the highest and most serious crimes"). He explained that the sentence was sufficiently high to promote general deterrence, 18 U.S.C. § 3553(a)(2)(B); *see* JA 316 ("To afford adequate deterrence for criminal conduct, I believe that this sentence is appropriate."), and to protect the public, 18 U.S.C. § 3553(a)(2)(C); *see* JA 317 ("The need to apprise the public of the importance of punishing this kind of conduct is essential to protect the public from further crimes of the defendant."). And he examined the sentencing options available to him. 18 U.S.C. § 3553(a)(3); *see* JA 317–18.

While the court ultimately sentenced Nickson at the high end of the guidelines range, it gave ample reasons for doing so. The court in the end did not exceed its considerable sentencing discretion in applying the advisory guidelines to this criminal and these crimes. *See United States v. Barnett*, 398 F.3d 516, 528 (6th Cir. 2005) ("Under the new post-*Booker* framework, the district court is empowered with greater discretion to consider the [§ 3553(a)] factors . . . in determining a proper sentence.").

Nor, contrary to Nickson's contention, did the sentence lead to unfair sentencing disparities among the defendants. In rejecting this argument below, the district court legitimately noted that 57 months was an appropriate sentence given that it had sentenced Alberta Butler, a co-conspirator who played a "far, far smaller" role in the fraud, JA 322, to a 24-month sentence. *See id.* ("I think that a sentence two and-a-half times as much as Ms. Butler is an appropriate sentence for Mr. Nickson."). The district judge also sought to square Nickson's sentence with those of prior defendants convicted of similar crimes. JA 322 ("I have to look at other types of conduct of a similar nature that I have

seen over my 15 years that have resulted in penalties.").  Because the district court did not abuse its considerable sentencing discretion in imposing this 57-month sentence, we need not consider Nickson's final argument—that we should remand the case to the district court with specific instructions to impose a 30 to 37 month sentence.

IV.

For these reasons, we affirm.