**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0278n.06
Filed: April 13, 2005

03-6506

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| TAMARCUS PITTMAN, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SILER, BATCHELDER, and DAUGHTREY, Circuit Judges.

**PER CURIAM.** The defendant, Tamarcus Pittman, was convicted of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g), and was sentenced to 57 months in prison, to be followed by three years of supervised release. On appeal, he challenges the sufficiency of the evidence to support his conviction, the admissibility of a statement he made to police at the time of his arrest, and the district court's failure to declare a mistrial. Subsequent to the filing of briefs and the release of the Supreme Court's opinion in *United States v. Booker*, 125 S. Ct. 738 (2005), Pittman filed a supplemental brief also challenging his sentence on the basis of a two-level enhancement that was imposed for relevant conduct involving a weapon with an obliterated serial number, pointing out that his possession of that weapon had been contested at trial. We find no reversible error in

connection with the jury's verdict and the resulting judgment of conviction. However, we conclude that the sentencing order must be vacated and the matter remanded for re-sentencing under *Booker*.

**FACTUAL AND PROCEDURAL BACKGROUND**

While the defendant's residence, a duplex condominium, was under surveillance by officers from the Shelby County Sheriff's Office, Pittman was observed as he arrived riding on a motorcycle, closely followed by an SUV. The defendant walked into the house and re-emerged a few minutes later, walking toward the SUV. According one of the surveillance officers, the defendant then looked directly at the green Pontiac Grand Prix from which the officer was observing the defendant and abruptly went back into the house.

Two other officers participating in the surveillance next observed the defendant walk out a different door into the backyard and go to a fence separating the defendant's yard from that of the adjoining unit. According to the officers, the defendant "wiggled" his way into a break in the fence, then walked over to the SUV, got in, and rode away as a passenger. Other officers acting as part of the surveillance team stopped the vehicle and arrested the defendant a few blocks away.

The three officers who had observed the defendant enter and leave the residence obtained consent to search it from the owner, who was the defendant's long-time "girlfriend" and the mother of his two children. In their search of the house, the officers found a box

- 2 -

of 9mm ammunition in a dresser drawer in the couple's bedroom.  They also found a cell phone bill in the defendant's name in the bedroom.  In the backyard, at the broken point in the fence where the defendant had been observed, the police found a 9mm Uzi pistol, commonly referred to as a "Mach-11."  The pistol contained the same kind of ammunition that had been found in the dresser drawer.

During the booking process, the defendant made the following statement to the two officers who had observed him in the back yard of the house:

> Y'all ain't got nothing on me.  I know you got wives and kids.  You need to watch your back, watch out for your wives and kids.  That Mach-11 I got ain't nothing compared to what I do got.  I got rocket launchers and tear gas.  I'm not afraid to use them.  You need to tell your partner in the green Grand Prix to quit riding around if he knows what's good for him.  Y'all are not the only ones with a team.

When one of the officers asked the defendant if he was making a threat, the defendant replied, "No.  You take it as you want."

At trial, the government offered this statement as evidence that the Mach-11 belonged to the defendant, positing that he knew that he was being followed and so had hidden it.  The judge admitted the statement, over the defendant's objection, reasoning that:

> [T]he jury could infer that he's saying, you know, you got that, but that ain't nothing compared to what I could get, as if it is his. . . . [I]t's as if it is his.  Secondly . . . if, based upon [the defendant's] recognition or understanding of who was in that green

Grand Prix, took the action to – I mean, the jury could infer that was his Mach-11 that he took out to the yard and threw out there.

In addition to the gun and the ammunition that the police found and the defendant's statement implying ownership of the Mach-11, the government produced the defendant's girlfriend as a witness at trial. She testified that both the ammunition and the weapon belonged to Pittman, that the defendant lived with her, and that she had seen him with a Mach-11 pistol at some point in the past. On the other hand, the government also introduced a fingerprint analysis that did not find the defendant's prints on the gun and revealed someone else's prints on the box of ammunition. The jury convicted the defendant on the indictment's sole count charging Pittman with being a felon in possession of ammunition.

## DISCUSSION

### 1. Sufficiency of the Evidence to Support the Verdict

The defendant argues that there was no direct evidence of his possession of the ammunition and that the proof did not establish constructive possession of the ammunition beyond a reasonable doubt. According to Pittman, the physical evidence and testimony offered by the government "merely raised a suspicion that the defendant possessed the box of ammunition." He points to the fact that the police could not say definitely that he had placed the gun at the split in the fence, and that his girlfriend did not testify that she had ever seen him with the box of ammunition. The defendant also suggests that the

girlfriend's testimony was coerced by the threat of her being prosecuted for possession of the ammunition and losing her children. Finally, Pittman argues that his statement implying his ownership of the gun, which contained the same kind of ammunition that was in the box, was improperly admitted.

When we review claims of insufficient evidence, we look to see "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Zuern v. Tate*, 336 F.3d 478, 482 (6th Cir. 2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Criminal liability under 28 U.S.C. § 922(g) may be found based on either actual or constructive possession. *United States v. Schreane*, 331 F.3d 548, 560 (6th Cir.), *cert denied,* 540 U.S. 973 (2003). "To establish constructive possession, the evidence must indicate ownership, dominion, or control over the contraband itself or the premises . . . in which the contraband is concealed." *United States v. White*, 932 F.2d 588, 589 (6th Cir. 1991) (internal quotations omitted). "Circumstantial evidence may support a guilty verdict, even if the circumstantial evidence is inconclusive." *White*, 932 F.2d at 590 (citing *United States v. Stone*, 748 F.2d 361, 362-3 (6th Cir. 1984)).

Examining the record under the prescribed standard of review, we conclude that the evidence was legally sufficient to support the conviction. It was undisputed that the defendant was living at the house. The girlfriend's testimony and the discovery of the cell phone bill permit the conclusion that Pittman exercised enough dominion and control over

the bedroom to have had access to the dresser to place the ammunition there. A gun containing the same kind of ammunition stored in the dresser was found at the same place in the backyard where the defendant was observed moments after he looked directly at the vehicle in which one of the surveilling officers was sitting and then returned to the house. Moreover, his threatening statement to the police, which – as we hold below – was properly admitted, permits the inference that the gun and the ammunition were his.

## 2. Admission of the Defendant's Statement Threatening Police

Pittman's second claim is that the district court abused its discretion in admitting into evidence the threatening statement that the defendant made to the police. According to the defendant, the statement was inflammatory and had a prejudicial effect on the jury because it "painted the defendant as a brutal figure with powerful weaponry and surrounded by a group of hitmen."

The government offered the statement to prove that the Mach-11 belonged to the defendant and that he had hidden it behind the house. According to the prosecutor, the defendant's mention of the green Grand Prix used in the surveillance indicated that the defendant knew that he was being watched and thus offered an explanation for why he would have placed the gun in the split in the fence. In the statement, the defendant also implicitly admitted his ownership of the weapon. On appeal, the government also argues that the threats against witnesses are probative as spoliation evidence.

A statement with probative value may nevertheless be excluded if its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. However, "'[u]nfair prejudice' . . . does not mean the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986) *(*citing *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd,* 461 U.S. 30 (1983)).

We examine a trial court's admission of a statement into evidence for an abuse of discretion, *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003), viewing the evidence "in the light most favorable to its proponent, giving the 'evidence its maximum reasonable probative force and its minimum prejudicial value.'" *United States v. Schrock*, 855 F.2d 327, 333 (6th Cir. 1988) (quoting Weinstein & Burger, *Weinstein's Evidence* ¶ 403 [03] (1982)). Because a high value is placed on preserving the discretion of trial judges, appellate review affords their decisions great deference. "If judicial restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal." *United States v. Zipkin*, 729 F.2d 384, 390 (6th Cir. 1984) (quoting *United States v. Long*, 574 F.2d 761, 767 (3d Cir. 1978)).

In this case, the statement in question actually consists of three sub-parts: (1) the defendant's reference to the gun; (2) his reference to the Grand Prix; and (3) his mention of other weapons and his threat against the officers and their families. Because any of

these sub-statements could have been admitted independently, we find no abuse of discretion in the introduction of the entire statement.

We read the first part of the statement to be an admission of the defendant's ownership – or at least his possession – of the Mach-11, which contained the same kind of ammunition that the defendant was charged with illegally possessing, making this portion of the defendant's statement highly relevant. The same analysis makes relevant the defendant's mention of the Grand Prix in the second part of his statement, because it offers a reason for Pittman's return to the house and re-appearance in the area of the backyard where the gun was ultimately found. There was no danger of unfair prejudice from the introduction of either of these statements and, thus, no abuse of discretion on the part of the district court in permitting the jury to hear them.

The remainder of the statement – the threats against the officers and their families – although more problematic, is not without relevance, because in this circuit, such threats against police are considered spoliation evidence that is probative of a defendant's consciousness of guilt. *Copeland*, 321 F.3d at 597 (citing *United States v. Fortson*, 194 F.3d 730, 737 (6th Cir. 1999)). Under the circumstances of this case, in which the government was forced to use circumstantial evidence to prove its case, we conclude that the threats were more probative than they were prejudicial. Hence, there was no abuse of discretion in admitting the full statement under Rule of Evidence 403.

### 3.  Denial of the Motion for Mistrial

The defendant also claims that it was an abuse of discretion to deny his motion for a mistrial.  Prior to the commencement of the trial, the defendant had filed a motion *in limine* to prohibit the government from mentioning gangs or gang relations in connection with the defendant.  This motion was denied.  During the course of his testimony, one of the police officers said that the defendant was known as a gang member.  At that point, defense counsel moved for a mistrial.  The judge denied the motion, instructed the prosecutor to avoid any line of questioning that would lead to such testimony, and then gave this cautionary instruction to the jury:

> Ladies and gentlemen, I'm going to ask you to disregard the officer's testimony regarding anything about any gang.  Mr. Pittman is not here on trial about any involvement or relationship to any gang member or being a gang member or anything else.  So I'm going to ask you to disregard that information.  Do not consider that in any deliberations you make in this matter.

In reviewing the denial of a motion for a mistrial for abuse of discretion, we employ a five-factor test to determine prejudice to the defendant: (1) whether the reference was unsolicited; (3) whether the line of questioning leading up to the response was reasonable; (3) whether there was a curative instruction from the judge that was immediately clear and forceful; (4) whether there was any bad faith evidenced on the part of the government; and (5) what part of the total evidence the reference constituted.  *United States v. Forrest*, 17 F.3d 916, 920 (6th Cir. 1994).

We find no abuse of discretion in this case. The police officer's statement was unsolicited. The sidebar conference that followed immediately suggests that part of the reason for surveillance of the defendant in the first place was his gang affiliation, and that the officer was merely attempting to explain why the surveillance and a later search were conducted. The judge immediately issued a clearly-stated limiting instruction to the jury and to the testifying officer in the jury's presence. There is no indication of bad faith on the part of the government. Finally, there is sufficient evidence of guilt, apart from any effect the reference may have had, to sustain the conviction.

## 4. <u>The Sentencing Order</u>

In sentencing the defendant, the district court followed the recommendation in the pre-sentence report that assigned the defendant a base offense level of 14 under USSG § 2K2.1 (b)(4), and then added two levels because the firearm recovered by police in the defendant's back yard had an obliterated serial number. With a criminal history category of VI, the defendant's sentencing range under the Guidelines was 46-57 months, and the district court sentenced Pittman to serve 57 months. Without the two-level increase for relevant conduct, the range would have been 37 - 46 months, leading the defendant to contend that the sentence imposed by the district court prior to the Supreme Court's opinion in *Booker* must now be vacated and the case remanded for re-sentencing. We agree.

Because no challenge to the constitutionality of the sentence was raised in the district court, the *Booker* question in this case must be reviewed for plain error under the well-developed four-part analysis of *United States v. Olano*, 507 U.S. 725, 732 (1993). The government appears to concede that there was error here, although inadvertent on the part of the district judge, and that it is "plain," thus satisfying the first two prongs of *Olano*. What the government contests on appeal is whether, under the third and fourth prongs of the test, the error affected the defendant's substantial rights and seriously jeopardized the integrity of the judicial proceedings in this case. In attempting to establish that the sentence had no effect on the defendant's substantial rights, the government argues that the district court's decision to sentence at the high end of the pre-*Booker* sentencing range demonstrates that the court "did not feel that restricted by the lower end of the guideline range in imposing an appropriate sentence." As to the fourth and final prong, the government insists that because Pittman "received a fair sentencing proceeding under the long-standing practices that had been approved by the Supreme Court and by every court of appeals, . . . the imposition of a sentence under the binding Sentencing Guidelines, although erroneous in hindsight, these proceedings were not so 'egregious' as to threaten the[ir] fairness, integrity or pubic reputation."

We conclude that the government's position cannot be sustained in light of our recent opinion in *United States v. Barnett*, 398 F.3d 516, 523-31 (6th Cir. 2005), and that the proper course of action is to remand this case to the district court for re-sentencing in light of *Booker*.

*03-6506*

## **CONCLUSION**

For the reasons set out above, we AFFIRM the judgment of conviction, VACATE the district court's sentencing order, and REMAND the case to the district court for re-sentencing.

**ALICE M. BATCHELDER, Circuit Judge, Concurring.** I concur with the court's conclusion that there was no error in connection with the jury's verdict or the resulting judgment of conviction. I also concur in the court's decision to remand this case for re-sentencing because I agree that this circuit's post-*Booker* precedents require it. I write separately, however, to voice my disagreement with our recent and unwarranted departure from traditional plain error review.

Justice Breyer's majority opinion in *Booker* requires us to apply *Booker*'s Sixth Amendment holding and its remedial interpretation of the Sentencing Act to all cases on direct review. *United States v. Booker*, 125 S. Ct. 738, 769 (2005). *Booker* stresses, however, that where, as here, the constitutionality of the defendant's sentence was not raised below, we are to "apply *ordinary* prudential doctrines . . . ," such as plain error review, to determine if re-sentencing is warranted. *Id.* (emphasis added). Ordinary plain error review requires a defendant to demonstrate that he was prejudiced by the error. *United States v. Olano*, 507 U.S. 725, 734 (1993). Nonetheless, in *United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005), and in *United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005), this circuit has, without justification from the Supreme Court, removed this burden from defendants seeking post-*Booker* re-sentencing.

In *United States v. Oliver*, we considered whether to re-sentence a defendant whose sentence violated the Sixth Amendment in light of *Booker*. Despite purporting to apply plain error review, we failed even to discuss, much less enforce, the defendant's traditional

burden of proving that the district court's error prejudiced him. We decided that since Oliver received a sentence "beyond that which was supported by the jury verdict and [his] criminal history," he was necessarily prejudiced because he "*arguably* received a sentence that was longer than his sentence would have been absent a Sixth Amendment violation." *Oliver*, 397 F.3d at 379-80 (emphasis added). "Arguably" is not enough, however. Under the ordinary plain error review that *Booker* requires, 125 S. Ct. at 769, a defendant bears the burden of proving that he was prejudiced by the error, *Olano*, 507 U.S. at 734: i.e., that absent that error, he would more likely than not have received a lower sentence. By simply ignoring this requirement, *Oliver* effectively holds that every Sixth Amendment violation in a *Booker*-type case automatically prejudices a defendant, a holding that does not comport with Supreme Court precedent.

In *United States v. Barnett*, we proceeded to contort plain error review in *Booker*-type cases where there is no Sixth Amendment violation. he *Barnett* court not only eliminated a defendant's traditional burden of proving prejudice as part of plain error review by creating a presumption of prejudice in favor of the defendant, but it effectively placed this burden on the government instead by making that presumption rebuttable. *See Barnett*, 398 F.3d at 527-29 (presuming prejudice in *Booker*-type cases where there is no Sixth Amendment violation). Contrary to *Barnett*'s implication, the Supreme Court has never sanctioned reversing this burden. *See Olano*, 507 U.S. at 735 (refusing to address whether some errors "should be presumed prejudicial if the defendant cannot make a specific showing of prejudice"). In fact, in *Jones v. United States*, the Supreme Court

explicitly refused to remove the burden of proving prejudice from the defendant in *a death penalty case* involving allegedly improper jury instructions. 527 U.S. 373, 394-95 (1999) ("Where the effect of an alleged error is so uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial rights."). Since the *Jones* Court did not think it improper to require a capital defendant to show prejudice that could only manifest itself in secret jury deliberations, I cannot see where we divine the authority to flip the prejudice burden in non-capital cases where the defendant at least has the benefit of a sentencing transcript as evidence of the judge's sentencing intent.

Despite my disagreements with *Oliver* and *Barnett*, I am bound to follow this binding authority until a contrary rule is developed by this court *en banc* or by the Supreme Court. I am compelled to agree therefore that on the facts of Pittman's case, where the district court applied a two-level sentencing enhancement to Pittman's sentence based on the obliterated serial number on the firearm found in the backyard–a fact found only by the judge and not found by the jury or admitted by the defendant–that Pittman's sentence violated the Sixth Amendment as established in *Booker*. Accordingly, in light of our decision in *Oliver*, I concur in the decision to remand Pittman's case for re-sentencing.