NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0742n.06
Filed: August 24, 2005

Case No. 04-5714

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| BOBBY E. FISHER, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: KEITH, BATCHELDER, and COLE, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Defendant-Appellant Bobby E. Fisher ("Fisher") appeals his conviction and sentence for possession of a machine gun in violation of 18 U.S.C. § 922(o). Fisher challenges his conviction on the grounds that § 922(o) is an unconstitutional exercise of Congress's Commerce Clause power, and that the district court committed reversible error in failing to declare a mistrial after initially giving the jury an erroneous jury instruction. Fisher challenges his sentence in light of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005). For the reasons set forth below, we AFFIRM the judgment of conviction, but we conclude that the sentencing order must be VACATED and the matter REMANDED for re-sentencing.

I.

On November 20, 2002, Officer Benny Shelton of the Fourth Judicial Drug Task Force in Cocke County, Tennessee, executed a valid search warrant at Fisher's home. The search warrant was issued in relation to a drug investigation into Fisher's girlfriend, Stacy Murphy, who was living with him at the time. During the search, officers discovered and seized four firearms that they believed to be machine guns. The weapons were found in an unlocked gun cabinet along with other firearms and several boxes of ammunition, including twenty clips of machine gun ammunition. Fisher explained to the police at the time that he had assembled the weapons from firearm assembly "kits," three of which he had ordered through the mail from a publication called the Shotgun News, and the fourth of which he had purchased at a gun show in Knoxville, Tennessee. Fisher said he had used a welder from the shop in his garage to reconstruct the firearms.

After seizing the weapons, Officer Shelton turned them over to Agent Greg Moore of the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). Agent Moore sent the firearms to be tested by the Firearms and Explosives Technology Branch of the ATF to determine whether the weapons fit the definition of a machine gun. The ATF laboratory concluded that each weapon was capable of firing more than one bullet with a single pull of the trigger without being manually reloaded, and thus each met the definition of a machine gun. The lab report also concluded that each firearm had previously been fired.

After receiving the ATF report, Officer Shelton and Agent Moore returned to Fisher's home to interview him again. During this interview, Fisher admitted that after he re-fabricated the firearms he had tested them by firing live ammunition from one of the guns and blanks from the other three. According to Agent Moore, Fisher "readily admitted" that he had assembled the guns and that he knew the re-fabricated weapons constituted machine guns. Consequently, on August 26,

2003, Fisher was indicted by a federal grand jury on four counts of unlawfully possessing a machine gun in violation of § 922(o).

At the trial, Officer Shelton and Agent Moore testified to the foregoing information. Agent Moore also testified that any mail order gun kit sold in the United States would contain a warning that reassembling a working model machine gun would violate federal firearms laws. In addition, Agent Geoffrey Descheemaeker of the ATF testified that each gun was in "firing condition" when it was tested and that when test-fired, each gun functioned as a machine gun. Agent Descheemaeker specifically identified the four firearms as World War II era machine guns.[1] He explained that the gun kits consist of various manufacturer made components, but that in order to be legally imported into the United States the guns must be shipped disassembled either without or with an inoperable "receiver." The receiver is that portion of the gun that houses most of the mechanical parts of the firearm and into which, and then through which, a cartridge or shell moves on its way into the barrel's breech, from which the bullet is ultimately fired. Without a properly working receiver a machine gun cannot fire. Fisher had ordered the firearm kits and then fabricated one receiver out of black iron pipe and the other three receivers from the tailpipe of a Toyota automobile. As a result of Fisher's fabrication of the new receivers, the kits became operational machine guns.

Fisher also testified at his trial. He stated that he has been a gun collector for many years and that his interest in history prompted him to order and assemble the World War II era weapons to add to his gun collection. He also testified that he has been an active member of the Tennessee National

---

[1]Agent Descheemaeker identified the four guns as follows: (1) an Italian Model 38A Beretta submachine gun, 9mm Luger caliber; (2) a Portugese Model 48 submachine gun, 9mm Luger caliber; (3) a British Model MK II Sten machine gun, 9mm Luger caliber; and (4) a British Model MK III Sten machine gun, 9mm Luger caliber.

Guard for about thirteen years and that he had displayed the weapons at several recruiting events as examples of guns of foreign wars. Fisher admitted that he had assembled and possessed each of the four guns, and that he knew the firearms were classified as machine guns. However, he testified that he had never attempted to fire the weapons on automatic, and therefore he never knew whether his guns could actually function as machine guns. Following Fisher's testimony, the government called Agent Moore and Officer Shelton in rebuttal to reiterate that Fisher had admitted during his interviews with the authorities that he had fired live ammunition and blanks through each of the guns and that he knew the firearms functioned as machine guns.

Following closing arguments, the district court explained to the jury that § 922(o), makes it unlawful for "any person to transfer or possess a machine gun." The district court then instructed the jury that in order to find Fisher guilty, the government must prove two elements of the offense beyond a reasonable doubt: (1) that Fisher knowingly possessed the machine guns; and (2) that Fisher was aware of the essential characteristics of the firearms which made them machine guns as defined by 26 U.S.C. § 5845(b).

During its deliberations, the jury forwarded a question to the court asking the court to explain the meaning of the phrase "did knowingly possess, in and affecting commerce" as stated in the court's instructions. Apparently, the "in and affecting commerce" language had inadvertently been left in the jury instructions when the court prepared the charge by using instructions from a prior case involving a different firearms statute. Fisher moved for a mistrial, but the district court, finding no prejudice, denied the motion, and provided a prompt curative instruction to the jury.

The jury eventually returned a guilty verdict on only one count, which charged Fisher with possession of the Italian Model 38A Beretta submachine gun. The applicable sentencing guideline

4

for a violation of § 922(o) is found in U.S.S.G. § 2K2.1(a)(5) and calls for a base offense level of 18. Although Fisher had no criminal history, his base offense level was increased by two levels pursuant to U.S.S.G. § 2K2.1(b)(1)(A) because the offense involved three to seven firearms, yielding a total offense level of 20 and a sentencing guideline range of 33 to 41 months. The district court sentenced Fisher to 33 months' imprisonment and 3 years of supervised release, but the sentence was suspended and Fisher was released on bond pending the outcome of his appeal.

## II.

In his first assignment of error, Fisher argues that his conviction for unlawful possession of a machine gun should be reversed because § 922(o) is unconstitutional both on its face and as applied to him. We review the constitutionality of a statute de novo. *United States v. Faasse*, 265 F.3d 475, 480 (6th Cir. 2001). The statute provides that "it shall be unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o)(1). The only exceptions to this law occur when the transfer or possession is authorized by the United States or any of its agencies or political subdivisions, or if an individual transfers or possesses a machine gun that was lawfully possessed prior to the effective date of the statute on May 19, 1986. 18 U.S.C. § 922(o)(2)(A) and (B). Neither of these exceptions applies here.[2]

In reviewing the constitutionality of the statute under which Fisher was convicted, therefore, we begin with the premise that congressional enactments are entitled to a presumption of validity. *United States v. Morrison*, 529 U.S. 598, 607 (2000). Accordingly, "[d]ue respect for the decisions

---

[2]Despite Fisher's status as a member of the Tennessee National Guard, he does not fit into the exception found in § 922(o)(2)(A) because his possession of the four machine guns was not authorized by the National Guard or "reasonably connected to his militia service." *United States v. Haney*, 264 F.3d 1161, 1165 (10th Cir. 2001).

of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." *Id*. The Constitution delegates to Congress the power "[t]o regulate Commerce with Foreign Nations, and among the several States." U.S. CONST. art. I, § 8, cl. 3. Contemporary Commerce Clause jurisprudence has "identified three broad categories of activity that Congress may regulate under its commerce power." *United States v. Lopez*, 514 U.S. 549, 558 (1995). "First, Congress may regulate the use of channels of interstate commerce." *Id*. "Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Id*. "Finally, Congress' commerce authority includes the power to regulate . . . those activities that substantially affect interstate commerce." *Id*. at 558-59.

Fisher's claim is governed by *United States v. Beuckelaere*, in which we specifically held that Congress had a rational basis for the passage of § 922(o), and that the provision is a facially constitutional and permissible exercise of Congress's Commerce Clause authority under all three of the factors described by the Supreme Court in *Lopez*. 91 F.3d 781, 784-87 (6th Cir. 1996). Fisher nevertheless argues that the statute is unconstitutional as applied to him because the government proved no jurisdictional nexus to interstate commerce and failed to prove that mere possession intrastate of machine guns had a substantial affect on interstate commerce. However, under the precedent of this circuit, "[a]ny as-applied challenge is irrelevant since [§ 922(o)] does not contain a jurisdictional element and the prosecution need not put on evidence of a particular connection with interstate commerce." *United States v. Riddle*, 249 F.3d 529, 539 (6th Cir. 2001); *see also Haney*, 264 F.3d at 1166 ("Because § 922(o) contains no jurisdictional element (such as a requirement that

6

the possession be in or affecting interstate commerce), we treat Haney's challenge as a facial challenge."). Fisher's as-applied challenge, therefore, is properly treated as a facial challenge in this case, and is foreclosed by our decision in *Beuckelaere*.

## III.

In his second assignment of error, Fisher argues that his conviction should be reversed because the district court committed reversible error in failing to declare a mistrial after initially supplying the jury with erroneous jury instructions. We review for abuse of discretion the district court's denial of a motion for a mistrial. *United States v. Atisha*, 804 F.2d 920, 926 (6th Cir. 1986). "In considering whether a mistrial is appropriate, we are concerned with fairness to the defendant, but afford a strong presumption that prompt curative instructions will ameliorate the harm." *United States v. Randolph*, 173 F.3d 857, at *5 (6th Cir. 1999) (unpublished table decision). "Ordinarily, we will not reverse on the basis of an erroneous jury instruction if the error was harmless." *United States v. Frederick*, 406 F.3d 754, 761 (6th Cir. 2005).

Recognizing that § 922(o) does not contain a jurisdictional requirement and that the phrase "in and affecting commerce" was not included in the language of the indictment, the district court correctly concluded that it was error to include such a phrase in the jury instructions. But, finding no prejudice to Fisher, the district court denied his motion for a mistrial. The district court then assembled the jury and explained that the phrase "in and affecting commerce" was erroneously included in the jury  instructions and that the jury was "to disregard this phrase entirely, and it should not influence your deliberations in any way." The court gave the jury new jury instructions from which the erroneous phrase had been removed.

7

The district court did not abuse its discretion in denying Fisher's motion for a mistrial, especially considering the court's prompt curative instruction. Moreover, any error that did occur was harmless. *See* FED. R. CRIM. P. 52(a). Fisher argues that he was prejudiced by the deletion of an element of the offense that effectively "lessened the burden of proof by the government." As stated above, however, § 922(o) contains no jurisdictional element and the prosecution need not put on evidence of a particular connection with interstate commerce in order to obtain a conviction. We cannot envision a situation in which a criminal defendant can be prejudiced by the deletion of an element of the crime from the jury instructions that is not in actuality an element of the crime and which should not have been included in the jury instructions in the first place. Accordingly, we find no reversible error here.

**IV.**

In his final assignment of error, Fisher challenges the constitutionality of his sentencing under the Sentencing Guidelines in light of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005). Because Fisher did not object to his sentence in the district court, we conduct plain error review to determine if he must be re-sentenced. *Booker*, 125 S. Ct. at 769.

There is a basic tension in the facts presented which raises the question of whether this case should be remanded under *United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005) (Sixth Amendment violation), or *United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005) (no Sixth Amendment violation). In *Booker*, the Supreme Court reaffirmed its holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S. Ct.

8

at 756. In reviewing Fisher's trial testimony it is plain that Fisher unquestionably and specifically admitted to possessing all four firearms and to knowing that they were operational machine guns – the facts on which his sentence was enhanced. But the jury nevertheless acquitted him of that conduct with regard to three of the firearms raising an interesting question as to whether the jury's acquittal – in essence a rejection of Fisher's admissions – nullifies any admissions that he made.

Despite the underlying tension, it is not necessary for us to resolve the ambiguity created by the facts of this case. We are convinced that under the post-*Booker* precedent of this circuit, plain error has occurred and this case must be remanded for re-sentencing. *Oliver*, 397 F.3d at 378-80; *Barnett*, 398 F.3d at 525-30. Whether we remand under *Oliver* or *Barnett*, the district court is required to consider the Sentencing Guidelines as advisory and to sentence Fisher anew, *see Booker*, 125 S. Ct. at 757, 767, and so long as the court recognizes that it is not bound by the applicable guideline calculations the court may exercise its discretion to impose a sentence under the Sentencing Guidelines, including the two level enhancement found in U.S.S.G. § 2K2.1(b)(1)(A), if it determines that such a sentence is reasonable.

## V.

For the foregoing reasons, we **AFFIRM** the judgment of conviction in all respects; we **VACATE** the district court's sentencing order and **REMAND** the case to the district court for re-sentencing.